**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEE MARTIN DE LA TORRE, a/k/a
Lee Harlan De La Torre,

    Defendant - Appellant.

No. 12-7084
(D.C. No. 6:12-CR-00007-JHP-1)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MATHESON**, Circuit Judges, and **BLACKBURN**[**], District
Judge.

---

Defendant-Appellant Lee Martin De La Torre entered a conditional plea of
guilty to possession of an unregistered firearm, 26 U.S.C. §§ 5861(d), 5845, &
5871, and was sentenced to 18 months' imprisonment and three years' supervised
release. He now appeals the denial of his motion to suppress. Our jurisdiction
arises under 28 U.S.C. § 1291, and we affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] The Honorable Robert E. Blackburn, U.S. District Court Judge, District
of Colorado, sitting by designation.

<u>Background</u>

On September 27, 2011, a coalition of officers from the Oklahoma Drug Task Force and the Tulsa Police Department executed a search warrant on a residence in Broken Arrow, Oklahoma. The warrant sought evidence in an investigation unrelated to Mr. De La Torre. Investigator Elizabeth Crockett ("investigator") was present during the search; Mr. De La Torre was also present.

During the search, officers discovered a bag with white powdery residue in a bedroom. The residue field tested positive for methamphetamine. Later that day, the officers obtained a search warrant based upon probable cause of possession and consumption of methamphetamine. The affidavit authored by the investigator listed a litany of items allegedly related to the crime of possession, ranging from the apparent ("paraphernalia") to the peripheral ("foreign travel schedules"), and this was incorporated into the warrant. 1 R. 32, 35.

Approximately one hour after the issuance of the warrant, the investigator returned to the residence and served the warrant on Mr. De La Torre. In the same bedroom in which the first bag was found, officers discovered another bag with white powdery residue and various articles of drug paraphernalia. Additionally, officers discovered three improvised explosive devices—one labeled "F*** YOU BOOM"—along with fireworks in a bedroom closet.

Mr. De La Torre moved to suppress evidence of the explosive devices, arguing that the second search violated the Fourth Amendment. That motion was

referred to a magistrate judge, who recommended denial because, although the investigator "mismatched" the offense of possession with items authorized for seizure in both the affidavit and warrant, the good-faith exception to the exclusionary rule supplanted the warrant's overbreadth. Id. at 45-46. The district court adopted the magistrate's recommendation. 1 R. 69.

Discussion

On appeal, Mr. De La Torre argues that suppression was warranted because the second search warrant violated the Fourth Amendment's particularity requirement.[1] The government disagrees but also relies on the good-fath exception.

The Fourth Amendment provides that no warrant shall issue unless it "particularly describ[es] the . . . things to be seized." U.S. Const. amend. IV. Generally, the remedy for a violation of the Fourth Amendment is exclusion of evidence unconstitutionally seized. United States v. McCane, 573 F.3d 1037, 1042 (10th Cir. 2009). However, the exclusionary rule is a judicially created remedy, not a constitutional mandate. Id. The sole purpose of the exclusionary rule is to deter police misconduct, and evidence obtained under a warrant should

---

[1] In his motion to suppress, Mr. De La Torre also argued that the warrant was not supported by probable cause. 1 R. 14. On appeal, Mr. De La Torre's particularity argument subsumes his probable cause argument. Aplt. Br. 21-22. This appeal is resolved solely by considering the good-faith exception as it applies to the particularity of the warrant.

be suppressed only in the "unusual case" in which that purpose will be furthered. United States v. Riccardi, 405 F.3d 852, 863 (10th Cir. 2005). Under United States v. Leon, 468 U.S. 897, 924-25 (1984), where officers obtain and execute in "objective good faith" a search warrant issued by a "detached and neutral magistrate," there is nothing to deter. United States v. Nolan, 199 F.3d 1180, 1184 (10th Cir. 1999). Courts have the discretion to decide a case under Leon's good-faith exception rather than on the merits. Leon, 468 U.S. at 924-25. Several of our cases have done so. See, e.g., United States v. Gonzales, 399 F.3d 1225, 1228 (10th Cir. 2005); United States v. Rowland, 145 F.3d 1194, 1206 n.8 (10th Cir. 1998); cf. United States v. Otero, 563 F.3d 1127, 1136 (10th Cir. 2009) (Baldock, J., concurring). We review the applicability of the good-faith exception de novo. Nolan, 199 F.3d at 1184.

Mr. De La Torre argues that the warrant that led to the discovery of the explosives was so deficient that the executing officers could not reasonably presume it to be valid. Aplt. Br. 29-30. He further argues that the warrant lacked guidelines and references to specific crimes that would allow the officers to distinguish between what evidence was and was not to be seized. Id. Finally, he contends that the executing officers should have known that by "omitting the affidavit's description of an isolated possession of methamphetamine residue" the warrant allowed a search that was limitless in scope. Id. at 31.

We disagree. Even if a warrant is facially invalid, the reviewing court

"must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid." United States v. Leary, 846 F.2d 592, 607 (10th Cir. 1988) (internal quotations and brackets omitted). In this case, both the warrant and affidavit provide guidance in that they limit the myriad items listed to those "constitut[ing] evidence of" one crime: "Possession and Consumption of . . . Methamphetamine." 1 R. 35 (search warrant); 1 R. 32 (affidavit). Moreover, the same officer, Investigator Crockett, obtained and executed the warrant suggesting good-faith reliance that the warrant authorized seizure of evidence for which probable cause had been established earlier that day.

A.    Text of the Warrant

In United States v. Otero, 563 F.3d 1127 (10th Cir. 2009), we addressed a similar situation. In Otero, the search warrant authorized the seizure of items in two different sections: (1) "ITEMS TO BE SEIZED," and (2) "COMPUTER ITEMS TO BE SEIZED." Id. at 1129-30. The first section carefully "limit[ed] the search to evidence of specific crimes" of which the defendant was suspected, namely mail and credit card theft. Id. at 1132. In contrast, the section regarding computer items had "no limiting instruction whatsoever." Id. This second section purported to allow seizure of "[a]ny and all" information contained in the defendant's computer and made no effort to incorporate the limitations set out in the first section. Id. at 1132-33. This court held that the second section

authorized a "wide-ranging search" of the defendant's computer and was therefore invalid. Id. at 1133.

However, this overbreadth did not necessitate suppression of evidence obtained from the defendant's computer given Leon's good-faith exception. Id. Despite the second section's unlimited language, "one can see how a reasonable officer might have thought that the limitations in the first portion of [the warrant] would be read to also apply to the second portion." Id. at 1134. The officer who searched the computer therefore "understood his search as being limited to evidence of mail and credit card theft." Id. Given this understanding, the warrant's overbreadth did not constitute a "flagrant or deliberate violation of rights" that the exclusionary rule served to deter. Id. (quoting Herring v. United States, 555 U.S. 135, 143 (2009)).

Here, the facts are similar. Although the warrant incorporated the affidavit's boilerplate language (allowing seizure of evidence related to any conceivable drug crime), the warrant's preamble, setting forth probable cause, authorized the seizure of evidence of only one crime—"Possession and Consumption of . . . Methamphetamine." 1 R. 35. One can easily see how a reasonable officer could conclude that the authorized search, though purporting to extend to an exhaustive array of items, was limited to the only offense described. Id. So understood, the breadth of the items listed would not necessarily lead a reasonable officer to conclude that the warrant authorized an impermissible

"general" search.

B.     Circumstances of the Search

The circumstances surrounding the second search, including the investigator's participation in obtaining and executing the warrant, also suggest good faith. Good faith is indicated where "the officers executing the warrant were involved in the investigation throughout, and one of them wrote the affidavit to support the application." Otero, 563 F.3d at 1135 (citing Riccardi, 405 F.3d at 864).

Here, the investigator was present for the original discovery and authored the affidavit stating probable cause that Mr. De La Torre continued in unlawful possession of methamphetamine. 1 R. 32-33. The investigator returned to the residence an hour later to execute the search. Although the warrant omitted a reference to the discovery of the original bag with methamphetamine residue, the affidavit did describe that discovery. We conclude that reasonable officers in this situation would have reason to believe the warrant was valid, consider themselves authorized to search only for evidence of the crime for which they had probable cause, and would seize only those items that they believed the warrant and plain-view doctrine authorized.[2]

---

[2] Mr. De La Torre does not challenge the magistrate's conclusion that "the nature of the immediate danger posed by the explosive devices certainly justified their seizure." 1 R. 47.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge