Farrell, Senior Judge, concurring in part and concurring in the judgment: I agree with Judge Beckwith that the police’ use of the cell-site simulator to discover appellant’s precise location violated the Fourth Amendment because it was a “search” requiring a warrant. My analysis of why that is so is more limited than Judge Beckwith’s, however. I also agree that the government has not shown that the fruits of the use of the simulator would have been inevitably discovered by lawful means, and that this is not the sort of case in which the Supreme Court has found that suppression of the fruits would serve no deterrent purpose. Further, except that I would not decide whether the testimony of Nora Williams should have been suppressed, I agree that the evidence discussed in part II. E. of Judge Beckwith’s opinion was suppressible fruit of the war-rantless search. Finally, I explain briefly why I am not persuaded by Judge Thompson’s position in dissent that no search at all under the Fourth Amendment took place. I. As to inevitable discovery, a key argument by appellee in its original brief, I agree that the government has failed to show the “requisite actuality,” Hicks v. United States, 730 A.2d 657, 659 (D.C. 1999), that tracking the complainants’ cellphones with the simulator, had that taken place, would have led to the same seizure of incriminating evidence. The government in its brief states that appellant’s and the complainants’ cellphones “were ultimately found together in appellant's car,” and that since “the simulator was close enough to locate one of the phones, it inevitably was close enough to locate the other” (Appellee’s Brief at 32). But this analysis is troublesome partly because it relies on the fruits of the actual simulator use. See 6 Wayne R. Lafave, Search and Seizure: A Treatise cm the Fourth Amendment § 11.4 (a), at 283 (5th ed. 2016) (‘“[T]he fact making discovery inevitable must arise from circumstances other than those disclosed by the illegal search itself.’ ”), Moreover, the police began using the simulator a considerable length of time after appellant had come into possession of the complainants’ cellphones, and even then some 30-45 minutes elapsed before the simulator directed them to appellant’s car and cellphone. So there is too much surmise, I submit, in the reasoning that if the police had used the simulator to locate the complainants’ phones instead, those phones would still have been in appellant’s possession or, if so, in a powered-on condition enabling their detection. II. The dispositive issue, then, is whether the use of the cell-site simulator was a “search” requiring the police to have obtained .a warrant beforehand (in the now-conceded absence .of exigent circumstances). To answer that question it is enough, I believe, to know how the simulator learns of a target cellphone’s location. It does so by effectively commandeering the cellphone as a police investigative tool in the way Judge Beckwith describes, namely, by “actively inducing] the phone to divulge its identifying information,” ante at 713, from which the phone’s direction and distance relative to the simulator can be determined. This process of “grabbing” the target phone and making it the instrument of its own locational disclosure explains why the government’s primary reliance on the third-party doctrine of Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)—“Smith ... is controlling here” (Appellee’s Brief at 23) — to argue that appellant had no reasonable expectation of privacy in the police’ use of his phone is unpersuasive. Smith held that an individual enjoys no Fourth Amendment protection “in information he voluntarily turns over to [a] third part[y].” Id. at 743-44, 99 S.Ct. 2577. The reason is that by “revealing his affairs to another” an individual “takes, the risk ... that the information will be conveyed by that person to the government.” United States v. Miller, 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). Recently the Fourth Circuit applied.the third-party doctrine to hold that the government’s acquisition of historical cell-site location information (CSLI) from a suspect’s cellphone provider is not a search under the Fourth Amendment. United States v. Graham, 824 F.3d 421 (4th Cir. 2016) (en banc). Although that issue remains an open one in this court, and the Supreme Court is expected to decide it this term, Carpenter v. United States, No. 16-402, cert. granted June 5, 2017, Graham’s analysis at least serves by comparison to show why the use of a cell-site simulator to locate appellant’s phone compels a different conclusion.[1] Graham distinguished prior. Supreme Court cases involving “direct government surveillance” (e.g., United States v. Karo, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); United States v. Jones, 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)) from the situation where the government “obtains, from a third party, the third party’s records, which permit the government to deduce location information.” 824 F.3d at 426. Because-CSLI is information the individual . has already “ ‘exposed’ ... to the phone company’s ‘equipment in the ordinary course of business,’ ” that - person has “ ‘assumed the risk’ that the phone company would disclose their information to the government.” Id. at 427-28 (quoting Smith, 442 U.S. at 744, 99 S.Ct. 2577). The government, thus “does not engage in a Fourth Amendment ‘search’ when it acquires” CSLI from the cellphone provider. Id. at 427. But in contrast to this passive “acquir[ing]” or “obtain[ingj” of CSLI, direct government surveillance of a cellphone does constitute a search, as when — the Fourth. Circuit observed by footnote — “the government uses cell-site simulators ... to directly intercept CSLI instead of obtaining CSLI records from phone companies.” Id. at 426 n.4 When the police seek and obtain locational information by directly interacting with, indeed by taking functional control of, a suspect’s cellphone through a simulator, it cannot reasonably be said that the phone user has “voluntarily conveyed” locational information to anyone and thereby relinquished a reasonable expectation of privacy in the information. Smith, 442 U.S. at 744, 99 S.Ct. 2577. Police requests for cellphone location data held by a third party, however the Supreme Court resolves that privacy issue, are not comparable to forcing a cellphone to disclose its own identifying data. The police located appellant’s phone by effectively making it ■a self-investigative tool. Any reduced expectation of privacy an individual accepts by entering the cellphone world does not extend to co-optation of that kind. III. I also agree that suppression of most of the fruits of the unlawful search here will “pay its way,” United States v. Leon, 468 U.S. 897, 919, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), under the “cost-benefit analysis in exclusion cases.” Davis v. United States, 564 U.S. 229, 238, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). As Judge Beckwith points out, the government has not sought to show that any belief the police had that there was no time to pursue a search warrant was objectively reasonable, albeit mistaken. The record suggests, to the contrary, that the police decided to forgo the warrant process' either believing — unreasonably, in the virtual absence of relevant court decisions — that no Fourth Amendment intrusion was involved or to honor a proprietary-agreement for secrecy in using the device. See ante at 715-16 n.26. Thus, the search cannot be said to have involved the sort of “ ‘isolated,’ ‘nonrecurring’, police negligence ... .[that] lacks the culpability” required to justify suppression, Davis, 564 U.S. at 239, 131 S.Ct. 2419 (citing Herring v. United States, 555 U.S. 135, 137, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009)), even if it entailed no “‘deliberate,’ ‘reckless,’ or ‘grossly negligent’ disregard for Fourth Amendment rights.” Davis, 564 U.S. at 238, 131 S.Ct. 2419. The unlawfulness here was not like the “err[or] in maintaining records in- a warrant database,” id. at 239, 131 S.Ct. 2419, involved in both Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), Herring, supra; nor was it comparable to the mistaken but “objectively reasonable reliance on binding judicial precedent” in Davis, 564 at 239, 131 S.Ct. 2419. Exclusion of evidence was thus a proper remedy here, except that, unlike Judge Beckwith, I would not decide whether the testimony of Nora Williams should have been suppressed. Her testimony was given more than a year after the illegal search and only after, now represented by counsel, she had received use immunity for her testimony. Those circumstances present a difficult question of attenuation that we need not reach, because the admission of the immediate fruits of the search was not harmless error and requires reversal. In any new trial the parties can brief and the trial court resolve the issue of the admissibility of Williams’ testimony, should the issue arise. Finally, I am not persuaded by Judge Thompson’s position in dissent that no Fourth Amendment search took place because appellant had no “reasonable expectation that the location of his cell phone would remain private while he was traveling on the public roads with a powered-on⅜ stolen cell phone.” Post at 735 (emphasis added). That contention, resting on appellant’s presumed awareness of how the police might have located him (via the stolen cell phone) but did not, closely resembles the inevitable discovery argument we have rejected. See Appellee’s Supp. Brief at 6 (“[A]ppellant has effectively conceded that the use of a cell site simulator to locate the stolen Sprint cell phone would have been a ‘lawful investigative process’ ” (emphasis added)). Moreover, the theory appears to assume a conclusion of wrongdoing — that appellant possessed a “stolen” phone — disputed by appellant’s not-guilty plea at the time the suppression motion was litigated.[2] It would be unfair to hold that, in moving to suppress the fruits of the search of his cell phone, appellant assumed the burden of proving that his possession of another’s phone was lawful — the issue of guilty possession vel non on which the government would have the burden of proof at trial. The dissent’s ingenious argument for why no search took place is too fraught with difficulty to provide a basis for admitting in evidence the fruits of the warrantless manipulation of appellant’s cell phone. , The fact that the Supreme Court will take up cell phone technology in relation to the Fourth Amendment is alone reason for us to decide the present issue narrowly and not opine in broad stokes about privacy and electronic information, locational or other, . In McFerguson v. United States, 770 A.2d 66 (D.C. 2001), this court rejected the argument that "society would [not] impute a reasonable expectation of privacy to a burglar running away from the crime scene carrying in plain view a distinctively marked shopping bag .., stolen from the burgled residence and filled with the victim's property.” Id. at 71 (internal quotation marks and ellipses omitted). The government’s argument, we said, "assumes the very facts that were to be proved at trial— that [the defendant] was fleeing with goods he had stolen in the burglary.” Id.