# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          :
                                  :         ID No. 1808005494
         v.                         :         In and For Kent County
                                    :

RONNIER HENRY,            :

                                    :
         Defendant.         :

## MEMORANDUM OPINION & ORDER

Submitted: February 13, 2020
Decided:  April 29, 2020

*Upon the State's Appeal of a Suppression Decision
of the Court of Common Pleas  – REVERSED & REMANDED*

Christel Duff, Deputy Attorney General, Department of Justice, Dover, Delaware, *Attorney for the State*.

Ronnier Henry, Seaford, Delaware, *Pro Se* Defendant

**Clark, J.**

An on-duty paramedic discovered Defendant Ronnier Henry's car sitting at the intersection of State and Loockerman Street during the early morning hours of August 9, 2018. As the paramedic approached his car, he observed Mr. Henry lying unconscious across the front seat. He remained unconscious through multiple green light cycles. When he finally awoke, the paramedic instructed him to wait until the police arrived. An officer arrived shortly thereafter.

After a suppression hearing, the Court of Common Pleas held that because the paramedic was not a law enforcement officer, he lacked authority to instruct Mr. Henry to wait at the scene. On that basis alone, the court suppressed evidence that Mr. Henry was under the influence. It did so, notwithstanding its independent finding that the paramedic (and later the officer) possessed probable cause to believe that Mr. Henry had committed the crime. Pursuant to 10 *Del. C.* § 9902(b) and (c), the State appealed the trial court's suppression order.

In this case, the Court of Common Pleas erred. It incorrectly held that when the paramedic instructed Mr. Henry to remain at the site without law enforcement authority, it triggered the exclusionary rule's remedy. Here, the Court of Common Pleas need not have addressed the difficult issue of the paramedic's status in search and seizure analysis. Rather, because the court found that the paramedic had probable cause to believe that Mr. Henry was under the influence, it should not have applied the exclusionary rule regardless of his status. For these reasons and those that follow, the trial court's decision must be **REVERSED** and **REMANDED**. A trial in this matter shall proceed as provided by 10 *Del. C.* § 9902(c).

## Facts of Record

The facts referenced herein are those found by the Court of Common Pleas after a suppression hearing. On the morning of the offense, Lieutenant McMillon was an on-duty paramedic in Kent County. After accompanying a patient to Kent

2

General, he left the hospital and proceeded onto Loockerman Street. While stopped at a traffic light, he noticed that a car to his right remained stopped despite a green signal. After the green light cycled through two times, Lieutenant McMillon maneuvered his vehicle to look into the car. He thought he could see a body in the front seat. He then maneuvered his vehicle behind the car and parked. When doing so, he activated his vehicle's emergency lights to warn vehicles approaching from the rear that both vehicles sat just before the intersection.

Lieutenant McMillon then approached the driver's side of the car. There, he saw Mr. Henry lying in the front seat, either asleep or unconscious. At first, he tried to wake Mr. Henry by shouting but received no response. At that point, the Lieutenant called for police assistance. He testified that his training as a paramedic required him to first call for police assistance in the event that the unconscious person awoke and became violent. He also testified that he remained on the scene, in such cases, to render any necessary medical assistance.

Prior to the officer's arrival, Mr. Henry awoke. He appeared glassy-eyed and confused. He also had slurred speech. The Lieutenant asked Mr. Henry if he knew where he was and if he needed medical help. Mr. Henry responded that he did not know where he was. At first, Mr. Henry said he felt fine, but then told the paramedic that he may need medical help.

At some point during this assessment, Lieutenant McMillon instructed Mr. Henry to remain on the scene until the police arrived. He did so for two reasons: he remained unsure about whether there was a medical emergency,[1] and he believed Mr. Henry would be a danger to others if he left the area.[2]

---

[1] State's App'x to Opening Br., Ex. 5, at A12.

[2] *Id.* at A16 (explaining, through Lt. McMillon's testimony during cross-examination by Mr. Henry, that "the reason why I asked you to wait, sir, is because I felt you were impaired and wasn't sure if it was medically impaired or whatever it was, but I felt that you would be a danger if you continued on; therefore, I asked you to wait").

Dover Police Officer Hudson then arrived at the scene. Lieutenant McMillon relayed his observations to the officer. The officer then approached Mr. Henry. He observed that he had glassy and watery eyes, was argumentative, and was extremely talkative. Mr. Henry informed him that he had recently taken oxycodone and drank alcohol. At that point, Officer Hudson asked Mr. Henry to complete field sobriety tests. Mr. Henry refused. Based upon the information Lieutenant McMillon relayed to him, Mr. Henry's bloodshot and glassy eyes, his admission to taking oxycodone and consuming alcohol, and his argumentative demeanor, Officer Hudson arrested Mr. Henry. He charged him with Driving under the Influence of a Combination of Alcohol and any Drug.

## Procedural Background

On May 14, 2019, the Court of Common Pleas held a suppression hearing at Mr. Henry's request. At the close of the hearing, it granted Mr. Henry's suppression motion. The trial court held that the on-duty paramedic was a state actor because he worked for a government agency.[3] While focusing on Mr. Henry's perception of the paramedic, it found that Mr. Henry reasonably mistook the paramedic for a police officer.[4] Finally, the court found that the paramedic illegally detained Mr. Henry without law enforcement authority.[5] As a result, it suppressed all evidence after the point of detention. Given the court's ruling, the State orally certified that it could

---

[3] *Id.* at A31.

[4] *Id.* at A30 (comparing the paramedic's appearance to a police officer because (1) he had a badge and labeled as Kent County Public Safety and a uniform, and (2) he activated the emergency lights on his vehicle. *See also id.* at A33 (describing Lt. McMillon's appearance and reasoning that he had "a badge on his chest, a patch on his arm that says Kent County Public Safety and he has lights on his vehicle behind the car saying they're on and he walks up and says you got to wait, that's a detention by a State agent, State actor . . . all appearances he's a police officer and as a result, when he tells him to wait, he's not going anywhere, he had no reason to believe he could leave.").

[5] *Id.* at A29.

not prosecute Mr. Henry without the suppressed evidence. The court then dismissed Mr. Henry's charges.[6]

Thereafter, the State filed a motion for reargument. In it, the State argued that the court "misapprehended the law or facts such as would have changed the outcome of the underlying decision."[7] Namely, the State argued that (1) it did not receive proper notice of the suppression issue, (2) Lieutenant McMillon acted as a private citizen during the encounter, and (3) the exclusionary rule does not apply to the action of private citizens.

In a written decision, the trial court denied the State's motion. It recognized that Delaware courts have not addressed the issue of whether the exclusionary rule should apply to similar actions taken by an on-duty paramedic.[8] In denying the State's motion, the court reasoned that Lieutenant McMillon was a state actor while on duty.[9] It also reasoned that while the Lieutenant's motivation may have been public safety, a reasonable person in Mr. Henry's position would have believed Lieutenant McMillon to be a police officer because of his uniform, his emergency lights, and his failure to identify himself as a paramedic.[10]

The State then filed this appeal. It submitted its opening brief on November 20, 2019. Thereafter, Mr. Henry failed to file an answering brief. At that point, the Court issued a delinquent brief notice. On February 10, 2020, after Mr. Henry failed to participate in the appeal, the Court deemed the appeal to be submitted for decision without Mr. Henry's brief.

---

[6] *Id.*

[7] State's Mot. for Reargument, at 2 (citing *Kennedy v. Invacare*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006) (quoting *Bd. Of Mgrs. of the Criminal Justice Info Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Jan. 17, 2003)).

[8] State's App'x to Opening Br., Ex. 4, at 3.

[9] *Id.*

[10] *Id.* at 5.

## Standard of Review

This matter involves the State's appeal of an adverse suppression decision. When material evidence is suppressed or excluded before trial, and the State certifies that the evidence is essential to prosecute the case, the court "shall dismiss the complaint, indictment or information or any count thereof to the proof of which the evidence suppressed or excluded is essential."[11] In that event, "[t]he State shall have an absolute right of appeal to an appellate court . . . and if the appellate court upon review of the order suppressing evidence shall reverse the dismissal, the defendant may be subjected to trial."[12] The appeal is on the record.[13]

The standard of review on appeal includes deciding whether there was legal error and whether the trial court's decisions were the product of an orderly and logical deductive process."[14] The Superior Court must accept the trial court's factual findings supported by the record, even if it would have made contrary findings or conclusions.[15] As part of its appellate function, however, the Superior Court reviews questions of law *de novo.* This case involves a question of law.

## Discussion

The Court must first address the State's appeal in the context of Mr. Henry's failure to submit an answering brief. Pursuant to Superior Court Civil Rule 107(f), when a party fails to participate in appellate briefing, the Superior Court may take action necessary to expedite the disposition of the case.[16] The Rule provides broad

---

[11] 10 *Del. C.* § 9902(b).

[12] *Id.* at § 9902(c).

[13] Super. Ct. Crim. R. 37(f).

[14] *Onkeo v. State*, 957 A.2d 2, 2008 WL 3906076, at *1 (Del. 2008) (TABLE).

[15] *Id.*

[16] Sup. Ct. Civ. R. 107(f) (explaining "[i]f any brief, memorandum, deposition, affidavit, or any other paper which is or should be a part of a case pending in this Court, is not served and filed within the time and in the manner required by these Rules or in accordance with any order of the Court or stipulation of counsel, the Court may, in its discretion, dismiss the proceeding if the

discretion that permits the Court to dismiss the proceedings, to consider the filing or its opposition abandoned, or to summarily grant or deny the filing.[17]

Here, the State filed a timely notice of appeal and an opening brief. When Mr. Henry failed to file his answering brief, the Court sent him a delinquent brief notice. After thirty days with no response, the Court considered Mr. Henry to have waived his right to file a brief. It then considered the appeal to be submitted for decision based upon the State's opening brief, the trial court's written decision, and the remainder of the record.[18]

Next, the Court turns to the merits of the State's appeal. In its brief, the State focused on the paramedic's status when instructing Mr. Henry to remain on site, because the Court of Common Pleas focused on that in its decision. Accordingly, this Court must address this threshold issue to a certain extent in order to explain why its decision turns on a different issue: the trial court's probable cause finding.

When addressing this alleged seizure,[19] the Court must consider basic principles of Fourth Amendment law that apply to Delaware through the Fourteenth Amendment to the United States Constitution. The Delaware Constitution's search and seizure provision is substantially similar to the federal provision and protects the same interests.[20] Namely, Article I, Section 6 of the Delaware Constitution

---

plaintiff is in default, consider the motion as abandoned, or summarily deny or grant the motion, such as the situation may present itself, or take such other action as it deems necessary to expedite the disposition of the case").

[17] *Id.*

[18] *See* Case No. 1808005494, Dkt. 08, Order (directing the case to be decided on the record and the pleading filed).

[19] For purposes of the appeal, the Court accepts the lower court's finding that the paramedic detained Mr. Henry. The lower court did not address whether the detention constituted (1) a *Terry* level detention or (2) an arrest. Because the Court of Common Pleas found probable cause, a sufficient quantum of evidence justified both.

[20] *State v. Vouras*, 1980 WL 336623, at *2 (Del. Com. Pl. July 29, 1980) (citing *State v. Moore*, 187 A.2d 807 (Del. Super. Jan. 9, 1963)).

guarantees that "[t]he people [of Delaware] shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures[.]"[21]

Fourth Amendment guarantees apply to government action.[22] They generally do not apply to searches and seizures conducted by a private person.[23] Accordingly, purely private conduct triggers no search and seizure analysis.[24] On the other hand, police conduct that violates United States or Delaware Constitutional protections trigger both search and seizure analysis and the exclusionary rule's remedy. The analysis is more complicated regarding what falls in between. Examples of such matters include, on one side of the spectrum, private actor conduct intended to help law enforcement. On the other side of the spectrum, an example includes the conduct of non-police government actors. The paramedic's action in this case falls in the latter category. When a government employee such as a paramedic or a school principal is involved, the threshold issue of government action is met.[25] As non-police actors, however, their involvement requires a second level of inquiry. Namely, a court must analyze the nature of the non-police government conduct and weigh the future deterrent effect of excluding the evidence.[26]

Here, Lieutenant McMillon, as an on-duty paramedic, was a government actor. Accordingly, the Fourth Amendment applies to his conduct.[27] However, the

---

[21] Del. Const., Art. 1, § 6. *See also* U.S. Const., amend. IV (guaranteeing the right of the people to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures").

[22] *State v. Onumonu*, 2001 WL 695539, at *2 (Del. Super. June 18, 2001) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

[23] *Virdin v. State*, 780 A.2d 1024, 1030 (Del. 2001).

[24] *Id.*

[25] *See New Jersey v. T.L.O.*, 469 U.S. 325 (1985) (explaining that government actors for purposes of the Fourth Amendment are not limited to the police and include government officials generally).

[26] *See Arizona v. Evans*, 514 U.S. 1 (1995) (explaining that the issue of exclusion is separate from the consideration of whether the Fourth Amendment has been violated, and that the exclusionary rule should only be applied if it effectively serves its deterrent purpose by the exclusion).

[27] *Virdin*, 780 A.2d at 1030.

questions of (1) whether *the Fourth Amendment* applies to certain non-police governmental activity, and (2) whether *the exclusionary rule* applies to that same conduct are not one in the same.[28] Namely, "the issue of exclusion is separate from whether the Fourth Amendment has been violated . . . and exclusion is appropriate only if the remedial objectives of the [exclusionary] rule are thought most efficaciously served."[29]

In its decision, the Court of Common Pleas erred when concluding that Lieutenant McMillon's status, in and of itself, triggered the exclusionary rule. At the outset, it correctly found that he was a government actor, but then did not address the second part of the inquiry. It instead applied an evidentiary sanction because a governmental actor, with no actual police authority, told Mr. Henry to remain on site.[30] It supported this analysis by focusing only on the reasonableness of Mr. Henry's perception that Lieutenant McMillon was a police officer.

The exclusionary rule's remedy does not extend to the deterrence of individuals (whether purely private or government employed) that have no law enforcement authority from behaving as though they do. Likewise, it does not extend to situations where a defendant reasonably believes that the non-police government employee is a police officer. When the Court of Common Pleas so held, it cited no authority justifying an application of the exclusionary rule on that basis.

---

[28] Lafave 1 Search and Seizure § 1.8(e) (5th ed).

[29] *Evans*, 514 U.S. at 13–14 (citing *United States v. Leon*, 468 U.S. 897, 906 (1984) and *United States v. Calandra*, 414 U.S. 338, 348 (1974)). *See also* Lafave 1 Search and Seizure § 1.8(e) (5th ed.) (explaining that "the *T.L.O.* case made it abundantly clear that the question of whether the Fourth Amendment is applicable to certain non-police governmental activity and the question of whether the Fourth Amendment's exclusionary rule is applicable to that conduct are not one and the same and might not inevitably be answered in the same way").

[30] The Court of Common Pleas found this action to constitute a "detention" and then found there to be probable cause to support the detention. The Court need not address whether reasonable suspicion would be the floor necessary to justify the detention in this case. The trial court found probable cause which subsumes any requirement that the detention be justified by reasonable articulable suspicion.

It would be inappropriate to create such a rule because the exclusionary rule emerged as a judicially created response to Fourth Amendment violations.[31] The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect."[32] In performing its function, it is a court-imposed exception to what otherwise is a presumption of admissibility. Expanding the exclusionary rule's remedy to encompass a defendant's reasonable perception that a non-police actor exercised non-existing law enforcement authority is incorrect. It would serve no defined Fourth Amendment purpose to do so.

Civil and criminal law already provide remedies and penalties to address concerns generated by persons acting as police officers without authority. To be clear, Lieutenant McMillon's actions in this case were completely reasonable. He appropriately requested Mr. Henry to remain on site for public safety purposes (whether for Mr. Henry's health or for the safety of others on the roadway).

However, other civil and criminal remedies and penalties address situations *unlike* the one at hand. For instance, tort actions for invasion of privacy or false imprisonment exist to address when an actor's conduct constitutes a wrongful search or detention. These torts may also encompass someone's improper assumption of police authority when he or she takes the wrongful action. Likewise, a private party or a non-police governmental actor that improperly detains a person or wrongfully searches their property may also be criminally liable for unlawful imprisonment or criminal trespass.

In any event, Mr. Henry's reasonable misunderstanding that Lieutenant McMillon was a police officer did not require exclusion of evidence on search and seizure grounds. Applying the exclusionary rule's remedy in this instance, (1) in

---

[31] *Herring v. United States*, 555 U.S. 135, 139 (2009).

[32] *Id.* at 139–40 (quoting *Calandra*, 414 U.S. at 348).

10

the absence of a full analysis regarding the paramedic's status, (2) where probable cause was available to both the paramedic and the arresting officer, was legal error.

Here, the case turns on the trial court's probable cause finding; it found that Lieutenant McMillon had probable cause to detain Mr. Henry. The trial court also found that when Officer Hudson arrived, he also possessed probable cause to believe Mr. Henry was under the influence. The record evidence easily supports those findings. Namely, the Lieutenant observed Mr. Henry remain unconscious through multiple green light cycles at an intersection. Mr. Henry did not know where he was when he awoke. He also exhibited other indicia of being under the influence.

Given the trial court's finding of probable cause, it was immaterial whether the Lieutenant was (1) a private actor, (2) a non-police governmental actor, or (3) a law enforcement officer. Both the paramedic and the arresting officer detained Mr. Henry based upon facts that provided probable cause that he had driven under the influence. Such a finding obviated the need to identify Lieutenant McMillon's status.

**Conclusion**

For the reasons discussed, the Court of Common Pleas erred when suppressing the evidence in this case. As a result, the dismissal must be **REVERSED.** The matter is **REMANDED** and will be subject to trial pursuant to 10 *Del. C.* § 9902(c).

_____
Judge

11