**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1510
_____

UNITED STATES OF AMERICA

v.

DAVID COOPER,
            Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-19-cr-00001-001)
District Judge:  Honorable Joseph F. Leeson, Jr.
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 10, 2023
_____

Before:  JORDAN, PHIPPS, and ROTH, *Circuit Judges*.

(Filed: May 10, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

After losing a series of motions to suppress evidence, a Pennsylvania man, David Cooper, pleaded guilty to several drug trafficking charges and received a 32-year prison sentence. His plea agreement, however, allowed him to appeal the denial of the suppression motions. In this appeal, Cooper does just that, arguing that the government violated the Wiretap Act and the Fourth Amendment. He also contends that based on alleged misstatements by the government in support of its wiretap applications, the District Court should have held a *Franks* hearing. For the reasons below, we will affirm the judgment of the District Court.

## FACTUAL BACKGROUND

For several years, local police in and around Montgomery County, Pennsylvania, investigated Cooper's involvement in the drug trade. They discovered many incriminating facts about Cooper from various sources and methods, including three anonymous citizen complaints, nine confidential witness reports, several controlled drug buys from Cooper himself, data collected by pen registers and trap-and-trace devices, and incriminating jailhouse phone calls between Cooper and his girlfriend. In addition, to enable them to track Cooper's movements, the police requested and received three orders from the Court of Common Pleas for Montgomery County allowing them to acquire cell site location information associated with Cooper's cell phones. Altogether, the investigation established that Cooper was the leader of a drug trafficking organization that distributed large quantities of fentanyl and crack cocaine to a web of lower-level dealers. The information from these sources and methods also revealed that, out of fear of police surveillance, Cooper frequently altered his operations and switched cell phones.

2

Although the investigation generated convincing evidence of Cooper's criminal activity, it did not reveal the full scope of the drug conspiracy. So, law enforcement applied for three orders from the Pennsylvania Superior Court authorizing them to wiretap certain cell phones used by Cooper and his coconspirators.

Lieutenant Erick Echevarria, a detective with the Montgomery County District Attorney's Office, submitted a 103-page affidavit in support of those applications. The affidavit detailed each investigative method undertaken and the evidence collected against Cooper up until that point. It also explained the limitations of each of those methods and why they had not, and reasonably would not, ascertain the full extent of Cooper's organization. Specifically, those methods had failed to accomplish the investigation's goal of uncovering Cooper's sources of drugs and firearms, his network of associates, and his significant customers.

The Superior Court authorized the wiretaps as requested through three orders issued on May 18, 2018, pursuant to state wiretapping procedures. *See* 18 Pa. Cons. Stat. §§ 5708–5712.1; 18 U.S.C. § 2516(2). The first order allowed a wiretap of a cell phone Cooper used. A supplementary order approved a wiretap of another cell phone that Cooper used. The third order permitted a wiretap of a cell phone of one of Cooper's associates.

On June 1, 2018, the police relied on information from Cooper's intercepted conversations to obtain warrants to search his home and storage unit. In conducting the search of Cooper's home that same day, law enforcement found sixty-four grams of crack packaged for distribution as well as a 9mm handgun. The police also recovered a .40-caliber handgun from Cooper's storage unit.

3

## PROCEDURAL HISTORY

Following those searches, federal prosecutors took up Cooper's case. On January 3, 2019, a grand jury in the Eastern District of Pennsylvania indicted Cooper and a number of his associates. *See* 18 U.S.C. § 3231 (granting the district courts exclusive original jurisdiction over all federal prosecutions). As superseded by another indictment returned on June 26, 2019, which amended specific language in the document, the grand jury charged Cooper and his associates with a host of drug and gun offenses. Those included charges against Cooper himself for conspiracy to distribute controlled substances, *see* 21 U.S.C. § 846, possession with intent to distribute twenty-eight grams or more of crack, *see id.* § 841(a)(1), (b)(1)(B), possession of a firearm in furtherance of those crimes, *see* 18 U.S.C. § 924(c)(1), and possession of a firearm as a convicted felon, *see id.* § 922(g)(1).

In a series of pretrial motions, Cooper sought to suppress much of the evidence against him. On the contention that the wiretap orders were illegal, he tried to suppress not only the intercepted communications themselves but also the evidence recovered from his home and storage unit, which were searched pursuant to warrants granted in part based on wiretap evidence.[1] To support that claim, Cooper argued that Lt. Echevarria's affidavit did not meet the necessity and probable cause requirements of the federal Wiretap Act. He also asserted that the affidavit contained materially false or misleading statements and omissions, and on that basis, he requested a *Franks* hearing to probe its

---

[1] *See generally* 18 U.S.C. § 2515 ("Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.").

veracity. *See Franks v. Delaware*, 438 U.S. 154 (1978). Beyond the wiretaps, Cooper argued that the three surveillance orders issued by the Court of Common Pleas were not sufficient under the Fourth Amendment to allow access to his cell site location information.

The District Court rejected each of those motions. Afterwards, Cooper conditionally pleaded guilty to the charges against him and the District Court sentenced him to an aggregate prison term of 384 months. As part of his plea agreement, Cooper reserved the right to appeal the District Court's denial of his pretrial motions. *See United States v. Zudick*, 523 F.2d 848 (3d Cir. 1975). And he did so through a timely notice of appeal, bringing the matter within this Court's appellate jurisdiction over final orders. *See* 28 U.S.C. § 1291.

## DISCUSSION

### A.    The Cell-Phone Wiretaps Were Not Illegal.

#### 1.    *It Was Not Error to Conclude That the Wiretaps Were Necessary.*

To obtain a wiretap, the government must establish, among other things, that it is necessary. Proof of necessity must include a showing that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c), (3)(c). Cooper disputes that Lt. Echevarria's affidavit satisfied the necessity requirement on the ground that the government already had a very strong case against him and therefore did not need the wiretaps.

But a strong case may still necessitate a wiretap. Even when the government has enough evidence to arrest one or two participants in a criminal organization, wiretaps are

5

often the only means to uncover the full scope of the conspiracy.[2]  In this case,

Lt. Echevarria's affidavit explained how – even with all the other evidence gathered

against Cooper – a wiretap was still necessary to learn the full scope of his criminal

activity.  For example, although the anonymous tipsters and confidential witnesses were

instrumental in establishing Cooper's own guilt, they lacked the inside knowledge of his

organization needed to identify all of Cooper's coconspirators, his sources of drugs and

firearms, and his major customers.  Nor was it reasonably likely that undercover agents

could learn that information as Cooper was already suspicious of law enforcement and

was not likely to share the details of his operation with a newcomer.  Likewise, physical

surveillance, especially given the secluded location of Cooper's home, was not

reasonably likely to develop new information.  Other investigative tools, such as pen

registers and trap-and-trace devices, had also reached the limits of their utility.  Thus, it

was not erroneous to conclude that the wiretaps were necessary to discern the full scope

of Cooper's criminal operation.

### 2. The District Court Did Not Err in Finding Probable Cause.

The Wiretap Act also has a probable cause requirement.  Specifically, the

government must demonstrate probable cause that the target of the wiretap is guilty of an

enumerated offense and that the wiretap will uncover evidence of that crime.  *See*

---

[2] *See, e.g.*, *United States v. Bailey*, 840 F.3d 99, 116 (3d Cir. 2016) ("The government established that a wiretap was necessary to uncover the full scope of the [traffickers'] operation, despite the fact that law enforcement had enough evidence without it to arrest [its leader]."); *United States v. Vento*, 533 F.2d 838, 850 (3d Cir. 1976) ("Although normal investigative techniques might have been sufficient to implicate [its leader] in thefts from interstate shipment, such approaches could not show the scope of the conspiracy . . . ."); *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir. 1975) ("Although the government has actual knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of its participants learned.").

18 U.S.C. §§ 2516(2), 2518(3)(a)–(b), (d).  Here, Cooper brings two probable-cause challenges to the supplementary wiretap order.  Both objections are highly technical, and both lack merit.

First, he claims that the supplementary wiretap was authorized merely on reasonable suspicion, instead of probable cause.  It is true that certain portions of the supplementary application and the authorizing order reference reasonable suspicion.  But Cooper overstates that glitch: the supplementary order incorporated the first wiretap order, which was based on findings of probable cause that Cooper used multiple cell phones in an effort to prevent interception of his conversations.  *See* 18 Pa. Cons. Stat. § 5712.1(a)–(b).  Also, in other places, the supplementary order specifically mentioned probable cause with respect to the use of the second cell phone number in operating Cooper's "illegal drug distribution business."  App. 488–90.  Under these circumstances, the occasional references to 'reasonable suspicion' do not show that the supplementary wiretap was authorized without probable cause.

Second, Cooper challenges probable cause for the supplementary wiretap on the ground that it failed to incorporate Lt. Echevarria's affidavit by reference.  This technical argument is technically wrong: the application stated that "Echevarria's Affidavit of Probable Cause which was attached to the [first wiretap application]" is "incorporated herein by reference."  App. 518 ¶ 5.  *Cf. United States v. Yusuf*, 461 F.3d 374, 393–94 (3d Cir. 2006) (holding that a search warrant properly incorporated an exhibit when the exhibit was expressly cross-referenced in the warrant and accompanied it).

In short, Cooper fails to demonstrate that the District Court erred in denying his motions to suppress.

**B.      It Was Not Clear Error to Deny a *Franks* Hearing.**

Cooper also claims that the District Court clearly erred in refusing to conduct a *Franks* hearing on his motions to suppress. In both the wiretap and traditional search warrant contexts, a *Franks* hearing determines whether the government materially misled the magistrate in seeking approval for the search. 438 U.S. at 155–56. To obtain such a hearing, the defendant must make a "substantial preliminary showing" that includes, among other things, evidence that the "application contained false statements made with reckless disregard for the truth." *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (quoting *Franks*, 438 U.S. at 170); *see also Yusuf*, 461 F.3d at 383.

It was not clear error to conclude that Cooper did not make that showing. Cooper principally argued that Lt. Echevarria's affidavit omitted key details of the investigation from its 'Need for Interception' section. But those omitted facts were separately disclosed in the affidavit's 'Investigation Details' section. So again, his technical parsing of legal documents misses the mark.

Cooper also argues that the affidavit misrepresented a fact "to portray [him] in the most negative light possible so as to enhance the probability of gaining approval of the wiretap." Opening Br. at 40. The alleged misrepresentation was Lt. Echevarria's assertion that Cooper "discussed retaliation" against a person who supposedly stole his car. App. 274. Cooper claims that, in reality, he had *declined* another's suggestion to take revenge on the car thief and that Lt. Echevarria knew as much from a recording of a jailhouse phone conversation between Cooper and his girlfriend. But Cooper's explanation does not make untrue the affidavit's statement that he discussed retaliation, and the affidavit's 'Investigation Details' section discloses that he ultimately turned down the invitation to retaliate. Moreover, the broader context of the conversation reveals that Cooper declined to take revenge because he distrusted the person who suggested that he

8

do so, not because he was opposed to the violence in principle. It was not clear error for the District Court to rely on that context in determining that Cooper did not make the substantial preliminary showing needed to obtain a *Franks* hearing.

**C.      The District Court Did Not Err in Declining to Suppress Cooper's Cell Site Location Information.**

Cooper also challenges the Common Pleas Court's orders allowing the collection of his cell site location information. He claims that the orders violated his Fourth Amendment rights because under the Supreme Court's intervening decision in *Carpenter v. United States*, a warrant is generally needed to acquire that information. 138 S. Ct. 2206, 2221 (2018); *United States v. Hall*, 28 F.4th 445, 458 (3d Cir. 2022). But to suppress Cooper's cell site location information on this basis would elevate form over substance. Although the Common Pleas Court labeled each authorization as an 'order,' those 'orders' had the three essential qualities of a warrant. *See Dalia v. United States*, 441 U.S. 238, 255 (1979) (explaining that a Fourth Amendment warrant has three attributes: approval by a neutral magistrate; a finding of probable cause; and a particularized description of the items to be seized and places to be searched). They were entered by neutral judges. They were predicated on a showing of probable cause to believe that Cooper had broken the law. And they identified with particularity which devices' cell site location information could be acquired. Thus, the orders did not violate *Carpenter*. But even if they did, the exclusionary rule would still not apply because the orders were issued in reasonable reliance on then-binding precedent. *See United States v. Scarfo*, 41 F.4th 136, 167–69 (3d Cir. 2022); *United States v. Goldstein*, 914 F.3d 200, 203–06 (3d Cir. 2019).[3]

---

[3] *See generally Davis v. United States*, 564 U.S. 229, 241 (2011) ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to

9

**CONCLUSION**

For these reasons, the District Court properly denied Cooper's motions to suppress and his requests for a *Franks* hearing. Accordingly, we will affirm Cooper's judgment of conviction.

---

the exclusionary rule."); *Herring v. United States*, 555 U.S. 135, 141 (2009) (explaining that the exclusion of evidence gathered in violation of the Fourth Amendment "is not an individual right and applies only where it 'result[s] in appreciable deterrence'" of police misconduct (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984))).