Chief Justice Roberts
delivered the opinion of the Court.
The Fourth Amendment forbids “unreasonable searches and seizures,” and this usually requires the police to have probable cause or a warrant before making an arrest. What *137 if an officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by another police employee? The parties here agree that the ensuing arrest is still a violation of the Fourth Amendment, but dispute whether contraband found during a search incident to that arrest must be excluded in a later prosecution.
Our cases establish that such suppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct. Here the error was the result of isolated negligence attenuated from the arrest. We hold that in these circumstances the jury should not be barred from considering all the evidence.
I
On July 7, 2004, Investigator Mark Anderson learned that Bennie Dean Herring had driven to the Coffee County Sheriff’s Department to retrieve something from his impounded truck. Herring was no stranger to law enforcement, and Anderson asked the county’s warrant clerk, Sandy Pope, to check for any outstanding warrants for Herring’s arrest. When she found none, Anderson asked Pope to check with Sharon Morgan, her counterpart in neighboring Dale County. After checking Dale County’s computer database, Morgan replied that there was an active arrest warrant for Herring’s failure to appear on a felony charge. Pope relayed the information to Anderson and asked Morgan to fax over a copy of the warrant as confirmation. Anderson and a deputy followed Herring as he left the impound lot, pulled him over, and arrested him. A search incident to the arrest revealed methamphetamine in Herring’s pocket, and a pistol (which as a felon he could not possess) in his vehicle. App. 17-23.
There had, however, been a mistake about the warrant. The Dale County sheriff’s computer records are supposed to correspond to actual arrest warrants, which the office also *138 maintains. But when Morgan went to the files to retrieve the actual warrant to fax to Pope, Morgan was unable to find it. She called a court clerk and learned that the warrant had been recalled five months earlier. Normally when a warrant is recalled the court clerk’s office or a judge’s chambers calls Morgan, who enters the information in the sheriff’s computer database and disposes of the physical copy. For whatever reason, the information about the recall of the warrant for Herring did not appear in the database. Morgan immediately called Pope to alert her to the mixup, and Pope contacted Anderson over a secure radio. This all unfolded in 10 to 15 minutes, but Herring had already been arrested and found with the gun and drugs, just a few hundred yards from the sheriff’s office. Id., at 26, 35-42, 54-55.
Herring was indicted in the District Court for the Middle District of Alabama for illegally possessing the gun and drugs, violations of 18 U. S. C. § 922(g)(1) and 21 U. S. C. § 844(a). He moved to suppress the evidence on the ground that his initial arrest had been illegal because the warrant had been rescinded. The Magistrate Judge recommended denying the motion because the arresting officers had acted in a good-faith belief that the warrant was still outstanding. Thus, even if there were a Fourth Amendment violation, there was “no reason to believe that application of the exclusionary rule here would deter the occurrence of any future mistakes.” App. 70. The District Court adopted the Magistrate Judge’s recommendation, 451 F. Supp. 2d 1290 (2005), and the Court of Appeals for the Eleventh Circuit affirmed, 492 F. 3d 1212 (2007).
The Eleventh Circuit found that the arresting officers in Coffee County “were entirely innocent of any wrongdoing or carelessness.” Id., at 1218. The court assumed that whoever failed to update the Dale County sheriff’s records was also a law enforcement official, but noted that “the conduct in. question [wa]s a negligent failure to act, not a deliberate or tactical choice to act.” Ibid. Because the error was merely *139 negligent and attenuated from the arrest, the Eleventh Circuit concluded that the benefit of suppressing the evidence “would be marginal or nonexistent,” ibid, (internal quotation marks omitted), and the evidence was therefore admissible under the good-faith rule of United States v. Leon, 468 U. S. 897 (1984).
Other courts have required exclusion of evidence obtained through similar police errors, e. g., Hoay v. State, 348 Ark. 80, 86-87, 71 S. W. 3d 573, 577 (2002), so we granted Herring’s petition for certiorari to resolve the conflict, 552 U. S. 1178 (2008). We now affirm the Eleventh Circuit’s judgment.
II
When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search or seizure has not necessarily been the victim of a constitutional violation. The very phrase “probable cause” confirms that the Fourth Amendment does not demand all possible precision. And whether the error can be traced to a mistake by a state actor or some other source may bear on the analysis. For purposes of deciding this case, however, we accept the parties’ assumption that there was a Fourth Amendment violation. The issue is whether the exclusionary rule should be applied.
A
The Fourth Amendment protects “[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,” but “contains no provision expressly precluding the use of evidence obtained in violation of its commands,” Arizona v. Evans, 514 U. S. 1, 10 (1995). Nonetheless, our decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial. See, e. g., Weeks v. United States, 232 U. S. 383, 398 (1914). We have stated that this judicially created rule is “designed to safeguard *140 Fourth Amendment rights generally through its deterrent effect.” United States v. Calandra, 414 U. S. 338, 348 (1974).
In analyzing the applicability of the rule, Leon admonished that we must consider the actions of all the police officers involved. 468 U. S., at 923, n. 24 (“It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination”). The Coffee County officers did nothing improper. Indeed, the error was noticed so quickly because Coffee County requested a faxed confirmation of the warrant.
The Eleventh Circuit concluded, however, that somebody in Dale County should have updated the computer database to reflect the recall of the arrest warrant. The court also concluded that this error was negligent, but did not find it to be reckless or deliberate. 492 F. 3d, at 1218.[1] That fact is crucial to our holding that this error is not enough by itself to require “the extreme sanction of exclusion.” Leon, supra, at 916.
B
The fact that a Fourth Amendment violation occurred— i. e., that a search or arrest was unreasonable — does not necessarily mean that the exclusionary rule applies. Illinois v. Gates, 462 U. S. 213, 223 (1983). Indeed, exclusion “has always been our last resort, not our first impulse,” Hudson v. Michigan, 547 U. S. 586, 591 (2006), and our precedents establish important principles that constrain application of the exclusionary rule.
*141 First, the exclusionary rule is not an individual right and applies only where it “‘result[s] in appreciable deterrence.’” Leon, supra, at 909 (quoting United States v. Janis, 428 U. S. 433, 454 (1976)). We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation. Leon, supra, at 905-906; Evans, supra, at 13-14; Pennsylvania Bd. of Probation and Parole v. Scott, 524 U. S. 357, 363 (1998). Instead we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future. See Calandra, supra, at 347-355; Stone v. Powell, 428 U. S. 465, 486 (1976).[2]
In addition, the benefits of deterrence must outweigh the costs. Leon, supra, at 910. “We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.” Scott, supra, at 368. “[T]o the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs.” Illinois v. Krull, 480 U. S. 340, 352-353 (1987) (internal quotation marks omitted). The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free — something that “offends basic concepts of the criminal justice system.” Leon, supra, at 908. “[T]he rule’s costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application.” Scott, supra, at 364-365 (internal quotation marks omitted); see also United States v. Havens, *142 446 U. S. 620, 626-627 (1980); United States v. Payner, 447 U. S. 727, 734 (1980).
These principles are reflected in the holding of Leon: When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted “in objectively reasonable reliance” on the subsequently invalidated search warrant. 468 U. S., at 922. We (perhaps confusingly) called this objectively reasonable reliance “good faith.” Ibid., n. 23. In a companion case, Massachusetts v. Sheppard, 468 U. S. 981 (1984), we held that the exclusionary rule did not apply when a warrant was invalid because a judge forgot to make “clerical corrections” to it. Id., at 991.
Shortly thereafter we extended these holdings to warrant-less administrative searches performed in good-faith reliance on a statute later declared unconstitutional. Krull, supra, at 349-350. Finally, in Evans, 514 U. S. 1, we applied this good-faith rule to police who reasonably relied on mistaken information in a court’s database that an arrest warrant was outstanding. We held that a mistake made by a judicial employee could not give rise to exclusion for three reasons: The exclusionary rule was crafted to curb police rather than judicial misconduct; court employees were unlikely to try to subvert the Fourth Amendment; and “most important, there [was] no basis for believing that application of the exclusionary rule in [those] circumstances” would have any significant effect in deterring the errors. Id., at 15. Evans left unresolved “whether the evidence should be suppressed if police personnel were responsible for the error,”[3] an issue not ar *143 gued by the State in that case, id., at 16, n. 5, but one that we now confront.
The extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct. As we said in Leon, “an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus” of applying the exclusionary rule. 468 U. S., at 911. Similarly, in Krull we elaborated that “evidence should be suppressed ‘only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.’ ” 480 U. S., at 348-349 (quoting United States v. Peltier, 422 U. S. 531, 542 (1975)).
Anticipating the good-faith exception to the exclusionary rule, Judge Friendly wrote that “[t]he beneficent aim of the exclusionary rule to deter police misconduct can be sufficiently accomplished by a practice . . . outlawing evidence obtained by flagrant or deliberate violation of rights.” The Bill of Rights as a Code of Criminal Procedure, 53 Calif. L. Rev. 929, 953 (1965) (footnotes omitted); see also Brown v. Illinois, 422 U. S. 590, 610-611 (1975) (Powell, J., concurring in part) (“[T]he deterrent value of the exclusionary rule is most likely to be effective” when “official conduct was flagrantly abusive of Fourth Amendment rights”).
Indeed, the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional. In Weeks, 232 U. S. 383, a foundational exclusionary rule case, the officers had broken into the defendant’s home (using a key shown to them by a neighbor), confiscated incriminating papers, then returned again with a U. S. Marshal to confiscate even more. Id., at 386. Not only did they have no search warrant, which the Court held was required, but they could not have gotten one had they tried. They were so lacking in sworn and particularized information that “not even an order of court would have justified such proce *144 dure.” Id., at 393-394. Silverthorne Lumber Co. v. United States, 251 U. S. 385 (1920), on which petitioner repeatedly relies, was similar; federal officials “without a shadow of authority” went to the defendants’ office and “made a clean sweep” of every paper they could find. Id., at 390. Even the Government seemed to acknowledge that the “seizure was an outrage.” Id., at 391.
Equally flagrant conduct was at issue in Mapp v. Ohio, 367 U. S. 643 (1961), which overruled Wolf v. Colorado, 338 U. S. 25 (1949), and extended the exclusionary rule to the States. Officers forced open a door to Ms. Mapp’s house, kept her lawyer from entering, brandished what the court concluded was a false warrant, then forced her into handcuffs and canvassed the house for obscenity. 367 U. S., at 644-645. See Friendly, supra, at 953, and n. 127 (“[T]he situation in Mapp” featured a “flagrant or deliberate violation of rights”). An error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the rule in the first place. And in fact since Leon, we have never applied the rule to exclude evidence obtained in violation of the Fourth Amendment, where the police conduct was no more intentional or culpable than this.
To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.[4]
*145 Our decision in Franks v. Delaware, 438 U. S. 154 (1978), provides an analogy. Cf. Leon, supra, at 914. In Franks, we held that police negligence in obtaining a warrant did not even rise to the level of a Fourth Amendment violation, let alone meet the more stringent test for triggering the exclusionary rule. We held that the Constitution allowed defendants, in some circumstances, “to challenge the truthfulness of factual statements made in an affidavit supporting the warrant,” even after the warrant had issued. 438 U. S., at 155-156. If those false statements were necessary to the Magistrate Judge’s probable-cause determination, the warrant would be “voided.” Ibid. But we did not find all false statements relevant: “There must be allegations of deliberate falsehood or of reckless disregard for the truth,” and “Allegations of negligence or innocent mistake are insufficient.” Id., at 171.
Both this case and Franks concern false information provided by police. Under Franks, negligent police miscommunications in the course of acquiring a warrant do not provide a basis to rescind a warrant and render a search or arrest invalid. Here, the miscommunications occurred in a different context — after the warrant had been issued and recalled — but that fact should not require excluding the evidence obtained.
The pertinent analysis of deterrence and culpability is objective, not an “inquiry into the subjective awareness of arresting officers,” Reply Brief for Petitioner 4-5. See also post, at 157, n. 7 (Ginsburg, J., dissenting). We have already held that “our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal” in light of “all of the circumstances.” Leon, 468 U. S., at 922, n. 23. These circumstances frequently include a particular officer’s knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer’s knowledge and experience, Ornelas v. United States, 517 U. S. 690, 699-700 (1996), but *146 not his subjective intent, Whren v. United States, 517 U. S. 806, 812-813 (1996).
We do not suggest that all recordkeeping errors by the police are immune from the exclusionary rule. In this case, however, the conduct at issue was not so objectively culpable as to require exclusion. In Leon, we held that “the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.” 468 U. S., at 922. The same is true when evidence is obtained in objectively reasonable reliance on a subsequently recalled warrant.
If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation. We said as much in Leon, explaining that an officer could not “obtain a warrant on the basis of a ‘bare bones’ affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search.” Id., at 923, n. 24 (citing Whiteley v. Warden, Wyo. State Penitentiary, 401 U. S. 560, 568 (1971)). Petitioner’s fears that our decision will cause police departments to deliberately keep their officers ignorant, Brief for Petitioner 37-39, are thus unfounded.
Justice Ginsburg’s dissent also adverts to the possible unreliability of a number of databases not relevant to this case. Post, at 155-156. In a case where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system. See Evans, 514 U. S., at 17 (O’Connor, J., concurring) (“Surely it would not be reasonable for the police to rely ... on a recordkeeping system ... that routinely leads to false arrests” (second emphasis added)); Hudson, 547 U. S., at 604 (Kennedy, J., concurring in part and concurring, in judgment) (“If a widespread pattern of *147 violations were shown . . . there would be reason for grave concern” (emphasis added)). But there is no evidence that errors in Dale County’s system are routine or widespread. Officer Anderson testified that he had never had reason to question information about a Dale County warrant, App. 27, and both Sandy Pope and Sharon Morgan testified that they could remember no similar miscommunication ever happening on their watch, id., at 33, 61-62. That is even less error than in the database at issue in Evans, where we also found reliance on the database to be objectively reasonable. 514 U. S., at 15 (similar error “every three or four years”). Because no such showings were made here, see 451 F. Supp. 2d, at 1292,[5] the Eleventh Circuit was correct to affirm the denial of the motion to suppress.
* * *
Petitioner’s claim that police negligence automatically triggers suppression cannot be squared with the principles underlying the exclusionary rule, as they have been explained in our cases. In light of our repeated holdings that the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, e. g., Leon, 468 U. S., at 909-910, we conclude that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not “pay its *148 way.” Id., at 907-908, n. 6. In such a case, the criminal should not “go free because the constable has blundered.” People v. Defore, 242 N. Y. 13, 21, 150 N. E. 585, 587 (1926) (opinion of the Court by Cardozo, J.).
The judgment of the Court of Appeals for the Eleventh Circuit is affirmed.

It is so ordered.

 At an earlier point in its opinion, the Eleventh Circuit described the error as “ 'at the very least negligent,’ ” 492 F. 3d 1212, 1217 (2007) (quoting Michigan v. Tucker, 417 U. S. 433, 447 (1974)). But in the next paragraph, it clarified that the error was “a negligent failure to act, not a deliberate or tactical choice to act,” 492 F. 3d, at 1218. The question presented treats the error as a “negligent]” one, see Pet. for Cert, i; Brief in Opposition (I), and both parties briefed the case on that basis.

 Justice Ginsburg’s dissent champions what she describes as ‘“a more majestic conception’ of . . . the exclusionary rule,” post, at 151 (quoting Arizona v. Evans, 514 U. S. 1, 18 (1995) (Stevens, J., dissenting)), which would exclude evidence even where deterrence does not justify doing so. Majestic or not, our cases reject this conception, see, e. g., United States v. Leon, 468 U. S. 897, 921, n. 22 (1984), and perhaps for this reason, her dissent relies almost exclusively on previous dissents to support its analysis.

 We thus reject Justice Breyer’s suggestion that Evans was entirely “premised on a distinction between judicial errors and police errors,” post, at 158 (dissenting opinion). Were that the only rationale for our decision, there would have been no reason for us expressly and carefully to leave police error unresolved. In addition, to the extent Evans is viewed as presaging a particular result here, it is noteworthy that the dissent’s view in that case was that the distinction Justice Breyer regards as determinative was instead “artificial.” 514 U. S., at 29 (Ginsburg, J., dissenting).

 We do not quarrel with Justice Ginsburg’s claim that “liability for negligence ... creates an incentive to act with greater care,” post, at 153, and we do not suggest that the exclusion of this evidence could have no deterrent effect. But our cases require any deterrence to “be weighed against the ‘substantial social costs exacted by the exclusionary rule,’” Illinois v. Krull, 480 U. S. 340, 352-353 (1987) (quoting Leon, 468 U. S., at 907), and here exclusion is not worth the cost.

 Justice Ginsburg notes that at an earlier suppression hearing Morgan testified — apparently in confusion — that there had been miscommunieations “‘[s]everal times.’” Post, at 150, n. 2 (quoting App. to Pet. for Cert. 17a). When she later realized that she had misspoken, Morgan emphatically corrected the record. App. 61-62. Noting this, the District Court found that “Morgan’s ‘several times’ statement is confusing and essentially unhelpful,” and concluded that there was “no credible evidence of routine problems with disposing of recalled warrants.” 451 F. Supp. 2d, at 1292. This factual determination, supported by the record and credited by the Court of Appeals, see 492 F. 3d, at 1219, is of course entitled to deference.