AMUL R. THAPAR, District Judge,
dissenting.
In my colleagues two very thoughtful opinions, they debate whether or not a Terry stop occurred in this case. Because I would affirm the district court whether or not a Terry stop occurred, I dissent.
For the purposes of this dissent, I will assume a Terry stop occurred here. The next and most important question the court must answer is whether suppression is an appropriate remedy. It is not.
As the Supreme Court has recently said, “suppression is not an automatic consequence of a Fourth Amendment violation.” Herring v. United States, - U.S. -, 129 S.Ct. 695, 698, 172 L.Ed.2d 496 (2009). “Instead, the question turns on the culpability of the police and the potential exclusion to deter wrongful police conduct.” Id. This question is critical because suppression is a “judicially created rule ... ‘designated to safeguard Fourth Amendment rights generally through its deterrent effect.’ ” Id. at 699 (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). And, suppression has always been a “last resort, not [a] first impulse.” Id. at 700 (citations omitted).
Thus, once a court determines that a Fourth Amendment violation has occurred, it must go to the next step and determine whether suppressing the evidence that resulted would have a deterrent effect. Id. And, only when the Court determines that benefits of deterrence outweigh the costs should a court suppress. See id. at 700-01.
Here, it is clear that no good deterrent effect would occur from suppressing the evidence. Indeed, the officers did exactly what society would want them to do.
Officer Carneal testified that at about 10 p.m. they drove by the carwash and noticed a white car in the carwash, which no one was washing. Record on Appeal Volume 1 (“R.O.A.1”) at 7-8. They turned around and came back and saw the vehicle still sitting in the last bay of the carwash. Id. at 8. They could not see if anyone was in the car. Id. The officers did not know why it was sitting in the carwash and were worried that someone might have been hurt or injured. Id. at 9. Thus, they drove up to the car in their black Explorer. Id. at 8. As the officers approached, they flipped on their emergency lights to identi *951 fy themselves. Id. The officers knew this was a high-crime area. Id. at 9. Obviously, in such an area, safety dictates that officers identify themselves before approaching someone at night in an unmarked vehicle.
I cannot fault a single thing that the officers did in this instance. Once they approached and saw the drugs, it is obvious that they could arrest the defendant. Thus, the critical facts remain the officers (1) noticing a vehicle in a carwash not being washed, (2) approaching the vehicle to check on the well-being of any occupants, and (3) identifying themselves. Taken together or apart, none of these things is worth deterring by suppression. Indeed, one would be hard pressed to identify what benefit suppression would be in this instance.
Imagine the following scenario: A police officer is driving along the highway and he notices a car on the side of the road. Worried that someone in the car may need help, the officer pulls in behind the car and activates his emergency lights to warn oncoming traffic. He then approaches the car and sees a man seated in the driver’s seat with a gun in his hand and someone dying in the seat next to him with a gunshot wound to the head. Is this a Terry stop? Yes. See, e.g., Reid v. Georgia, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (noting that “any curtailment of a person’s liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity”). Few, if any, people on a highway feel free to leave when a police car is behind them with their emergency lights activated. See United States v. Campbell, 486 F.3d 949, 954 (6th Cir.2007) (stating seizure of individual occurs when a reasonable person believes that they are not free to leave); cf. Brendlin v. California, 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (“The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver even though the purpose of the stop is limited and the resulting detention quite brief.” (internal quotations and citation omitted)). Does the officer have reasonable suspicion that criminal activity is afoot? No. He simply stopped to make sure that the occupants of the vehicle were alright. Under either decision by my colleagues, the trial court would have to suppress. What societal interest does suppression promote in that instance?
What is the difference here? Nothing. Officers approached to check on the well-being of the occupants of the car in the carwash. They identified themselves before approaching. Again, all things they should have done. Yet, we are now going to deter officers from doing exactly that. We are going to say that if you approach to help someone, we will suppress the evidence if you happen upon activity of a crime.
The exclusionary rule has always been intended to curb police misconduct. See, e.g., Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stating purpose of the exclusionary rule is to deter “lawless police conduct”); Brown v. Illinois, 422 U.S. 590, 610-11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part) (stating that deterrent value of exclusionary rule is most effective when “official conduct [is] flagrantly abusive of Fourth Amendment rights”). Thus, in order for the exclusionary rule to apply, “police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.” Herring, 129 S.Ct. at 702.
*952 The record simply contains no evidence of police misconduct here. Thus, I would affirm.