Filed 8/9/23  P. v. Tisdale CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW NELSON TISDALE,<br><br>    Defendant and Appellant. | C097274<br><br>(Super. Ct. No. 21FE013657) |

In this appeal, defendant Matthew Nelson Tisdale challenges the magistrate's denial of his motion to suppress evidence obtained following two nonconsensual searches of his room on August 10, 2021, and November 30, 2021.  The officer conducting both searches erroneously believed defendant was on searchable probation.

On May 7, 2019, defendant pled no contest to a misdemeanor and was placed on three years' probation.  However, effective January 1, 2021, Penal Code sections 1203a

and 1203.1[1] were amended by Assembly Bill No. 1950 (Reg. Sess. 2019-2020) (Assembly Bill 1950) (Stats. 2020, ch. 328, §§ 1, 2) to limit the maximum term of probation a trial court is authorized to impose for most felony offenses to two years and most misdemeanor offenses to one year.  (§§ 1203a, subd. (a), 1203.1, subds. (a) & (m).)

The parties agree that as a result of Assembly Bill 1950 defendant's probation terminated by operation of law after one year, and thus would have terminated upon the effective date of Assembly Bill 1950, well before the searches in this case.  The parties disagree whether the sheriff's deputy leading the search made objectively reasonable efforts to determine that defendant was on probation, based on his reliance on information posted on a computer system, which the deputy confirmed with a probation officer assisting in the search.  The trial court denied the motion to suppress, finding that as to the first search, the officer reasonably relied upon the information from the probation department indicating that he was on probation.  As to the second search, the trial court found that the officer acted in good faith in reliance upon a valid pretrial release search condition.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts from the evidence elicited at the preliminary examination, which also served as a hearing on defendant's motion to suppress.

In August 2021, Deputy Sheriff Austin Kurtz was on the Problem Oriented Policing Team for Rancho Cordova.  The officer had received information about suspected narcotics dealings in an apartment where he determined defendant resided. The probation office was planning a probation sweep of multiple individuals and locations.  Kurtz asked that defendant's residence be added to the list.

---

[1] Undesignated statutory references are to the Penal Code.

Kurtz's general practice to determine a person's probation status is to check the Sacramento County Sheriff's Department's Known Persons Finder system (KPF). Kurtz testified that he had used the KPF system no less than a thousand times during his seven years as a sheriff's deputy. He found it to be reliable. Until defendant's case, it had never been inaccurate regarding an individual's probation status. Kurtz further testified that, to his knowledge, the KPF system ties into multiple other systems, including the probation office's system, so updates should occur immediately across the board, without the necessity of updating an individual's page.

Kurtz checked defendant's probation status on the KPF system and determined that there were two probation dockets with search conditions for defendant. However, Kurtz knew that Assembly Bill 1950 had shortened the maximum length of certain probation terms. He believed misdemeanors went from three years to one year and felonies from five years to three years. Probation Officer Bernard had advised Kurtz that probation terms were being shortened. For that reason, when Kurtz first requested that defendant be included in the probation sweep, he asked Bernard to confirm that defendant was on probation through the probation office's internal program. On the morning of the sweep, Kurtz again asked Bernard to check defendant's probation status. Kurtz relied on the information he obtained from the KPF system, as well as provided by Bernard confirming that defendant was still on searchable probation, and believed it to be correct. Kurtz did not personally calculate defendant's probation term.

In conducting the probation search on August 10, 2021, Kurtz and the officers accompanying him, including Bernard and his partner, knocked on the back door of the defendant's residence because the front door did not appear to be in use. One of the residents answered the door. Defendant was inside his bedroom with the door locked. Kurtz knocked on the bedroom door and defendant came out and closed the door behind him, locking it. The officers forced entry into the room. Defendant then advised Bernard

3

that there was dimethyltryptamine (DMT) in the room.[2]  A search of the room located identifying and financial information for at least 10 different individuals.  There was a crock pot containing a dark black or brown liquid, a tray with a yellow residue, and a small amount of yellow powder in a silicon container that Kurtz identified as DMT based on his experience.  Officers located a printer and blank checks, and a pay and owe ledger in a backpack.  The officers collected the blank checks, identifications, and DMT residue, and booked them into evidence.

Defendant was charged with fraudulent retention of the identifying information of another with a prior conviction of the same offense (§ 530.5, subd. (c)(2)); fraudulent retention of personal identifying information of 10 or more persons (§ 530.5, subd. (c)(3)), and possession of a controlled substance, DMT (Health & Saf. Code, § 11350, subd. (a).)  Defendant was granted pretrial release under an order providing for search and seizure without a warrant.

In November 2021, Kurtz conducted another search of defendant's residence. Kurtz had received more emails reporting narcotics sales at the residence.  Kurtz again checked the KPF system for defendant's probation status, which showed one probation docket, as well as the pretrial release order from the recently filed case.  At Kurtz's request, Bernard confirmed both the probation and pretrial release search conditions.

In sum, Bernard assured Kurtz on both occasions that the probation dockets for defendant were valid at the time of the searches.  Bernard was also present at both searches.  Probation officers who accompanied Kurtz on the searches also confirmed defendant's probation status and pretrial release search conditions.

During the November 2021 search, officers pushed their way through the front door.  Defendant was in the living room.  The officers again searched defendant's room.

---

[2] DMT is a hallucinogenic drug.  (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1075, fn. 5.)

They found fraudulent checks, two credit card machines, COVID vaccination cards, and California Employment Development Department documentation. The financial and identifying information located did not belong to defendant and differed from that discovered in the first search. Officers collected these items, including a printer with an identification card in it, and booked them into evidence.

During both the August and November 2021 searches, defendant told the officers multiple times that he was not on probation.

Based on the November 2021 search, defendant was charged in a separate case with one count of fraudulent possession of personal identifying information of another with a prior conviction of that offense. An amended complaint consolidated the charges against defendant in both cases.

Defendant filed a motion to suppress the evidence obtained in the August 2021 and November 2021 searches. The District Attorney filed an opposition. Defendant filed a response to the opposition, as well as a supplemental memorandum of points and authorities.

The trial court conducted a hearing on the motion to suppress at which Kurtz was the sole witness. After argument by counsel at the close of his testimony, the trial court stated: "I don't think the D.A. is arguing that [defendant] was on probation, only that the officer thought he was. And the question before the Court is: How reasonable was the officer's actions in light of what the current state of the law was?"

The trial court continued: "I want to say that the officer in the Court's view was convincing and persuasive in that his sincerity is not questioned. I believe when the officer testified, he was as accurate as he could be, and not evasive in any way.

"I'm not sure that the officer knows for absolutely certain right now that the defendant wasn't on probation or if he wasn't by matter of law. I think he was somewhat uncertain.

5

"The purpose of the exclusionary rule is to deter police misconduct, but larger – or largely to [defense counsel's] argument, it's to deter government misconduct.

"Clearly, the officer believed the defendant to be on probation, not withstanding [*sic*] [defendant's] protestations. He got that from Web KPF, that he knew was a reliable system that drew from other resources that had always proved reliable for him in the past and used it over a thousand times, but he also was aware that the law was changing and he wanted to make sure he checked with probation.

"It seems counterintuitive to punish the officer for going the extra step to checking with the probation officer, because if he had simply relied on the system that had always proven reliable in the past, it would be a much easier decision that the officer reasonable relied on that.

"So the Court is put in the [un]enviable position of either rewarding the government for the negligence in failing to update their systems and take the defendant out of the system or to punish the officer for doing a double-check to make certain that he was on probation when he really didn't have to. So I'm going to take the matter under submission with regard to the first search.

"With regard to the second search, the officer testified persuasively that he was aware of the pretrial release flag on KPF. When he checked into what that meant with the Probation Department and what the terms of the pretrial release were . . . he correctly learned that there were search conditions on that pretrial release. That removed any taint created by the first search, and there are cases directly on point.

"So the second search is clearly . . . valid and the motion to suppress on that case is denied. But this is a consolidated case, so I have to take the matter under submission on the first search.

"It's unfortunate that I don't know the exact source of the error. I don't know why the probation officer came to the conclusion he did and gave that information to the

6

officer who conducted the search, that lack of information on the record may cause me to grant the motion on that search, but I need to do a little more research."

Later that day, the trial court issued a written ruling denying the motion to suppress regarding both searches. The trial court ruled: "As the prosecution concedes, [defendant's] probation terminated on January 1, 2021, as a matter of law. The Probation Department's failure to update their system was contrary to law and the prosecution failed to establish how the error occurred or that it was 'objectively reasonable.' Without knowing the source of the error, the Court cannot determine whether it was sufficiently 'attenuated.' However, the Court can find the error was 'nonrecurring' because of the Deputy's testimony that he has used the Web KPF system extensively for the past 7 years and never once found it to be in error. He testified that he was aware that the Legislature had passed a new law that changed the terms of probation and that is why he took the extra step to confirm the Defendant was still on probation. To employ the exclusionary rule under these facts would be to undermine the purpose of the rule itself. Under the unique facts of this particular case, the Court finds that it was completely reasonable for the Deputy to rely on the information provided by the Probation Department. The Court finds that, based on the evidence on the record, it was unclear to . . . Deputy Kurtz whether or not any changes in the law applied to [defendant's] probation status. Deputy Kurtz took reasonable steps to confirm the Defendant's probation conditions before executing the search on August 10, 2021. [¶] With regard to the second search conducted by Deputy Kurtz, on November 30, 2021, the Court finds that Deputy Kurtz relied on the valid search and seizure provisions of the Defendant's pretrial release."

Defendant pled no contest to two counts of identity theft with a prior conviction. As the factual basis for the plea, the prosecutor stated that, on August 10, 2021, officers conducted a search that found California driver's licenses and credit cards belonging to other people, and on November 30, 2021, officers conducted a search and found blank checks, Social Security cards, and bank cards belonging to other people.

The trial court sentenced defendant to the middle term of two years on the charge arising from the August 2021 search and one-third the middle term on the charge arising from the November 2021 search, for a total of two years eight months in the county jail pursuant to 1170(h), with 10 months suspended.

Defendant timely appealed.

DISCUSSION

" 'The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." ' [Citation.] Thus, 'searches and seizures inside a home without a warrant are presumptively unreasonable.' " (*People v. Troyer* (2011) 51 Cal.4th 599, 602.) "When a defendant raises a challenge to the legality of a warrantless search or seizure, the People are obligated to produce proof sufficient to show, by a preponderance of the evidence, that the search fell within one of the recognized exceptions to the warrant requirement. [Citations.] A probation search is one of those exceptions. [Citations.]" (*People v. Romeo* (2015) 240 Cal.App.4th 931, 939.)

"Where . . . the search is later found to be invalid," in this instance because a probation condition had expired . . . , "a Fourth Amendment violation is shown and the question thus becomes whether such a constitutional violation is appropriately remedied by the application of the judicially created exclusionary rule which prohibits the admission at trial of the evidence obtained during the unlawful search." (*People v. Downing* (1995) 33 Cal.App.4th 1641, 1650-1651, citing *United States v. Leon* (1984) 468 U.S. 897, 906.) Evidence must be excluded "only where it ' "result[s] in appreciable deterrence." ' " (*Herring v. United States* (2009) 555 U.S. 135, 141 (*Herring*).) "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Id.* at p. 144.) "[W]hen police mistakes are the result of

8

negligence    . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' [Citation.]  In such a case, the criminal should not 'go free because the constable has blundered.' [Citation.]" (*Id.* at pp. 147-148.)

" 'In reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found." ' " (*People v. Tully* (2012) 54 Cal.4th 952, 979.)  " 'As the finder of fact . . . the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable.' [Citation.]  We review its factual findings ' " 'under the deferential substantial-evidence standard.' " ' [Citation.] Accordingly, '[w]e view the evidence in a light most favorable to the order denying the motion to suppress [citation], and '[a]ny conflicts in the evidence are resolved in favor of the superior court ruling.' [Citation.]  Moreover, the reviewing court 'must accept the trial court's resolution of disputed facts and its assessment of credibility.' " (*Ibid.*)

Here, the August 10, 2021, search was warrantless and presumptively invalid as a result of Assembly Bill 1950, which shortened defendant's three-year probation term granted in 2019 to one year and thus terminated his probation and its associated search condition by operation of law on January 1, 2021, when Assembly Bill 1950 became effective.  Kurtz conducted the search based on erroneous information recorded on the KPF system and confirmed by Bernard that defendant was on probation and subject to search, notwithstanding that Bernard was knowledgeable on the effect of Assembly Bill 1950 and conveyed at least some information about the new law to Kurtz.

For purposes of application of the exclusionary rule, the issue thus becomes whether Kurtz acted in good faith based on the information provided to him.  (*Herring, supra,* 555 U.S. at p. 142.)  The " 'good faith inquiry is confined to the objectively

ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.' " (*Id.* at p. 145, quoting *United States v. Leon, supra*, 468 U.S. at p. 922, fn. 23; see also *People v. Rosas* (2020) 50 Cal.App.5th 17, 25.)

On this record, we cannot conclude that Kurtz would or should have known that the information on the KPF system confirmed by Bernard was not current with the changes made by Assembly Bill 1950 and therefore erroneous. We defer to the trial court's finding that Kurtz was credible and persuasive in his testimony that he had used the KPF system more than a thousand times over his seven years with the sheriff's office and never found it to be inaccurate. Moreover, in light of Kurtz's general knowledge conveyed by Bernard that Assembly Bill 1950 had shortened probation terms, Kurtz asked Bernard twice to confirm that defendant was on probation and subject to search prior to the initial probation sweep that included defendant's residence. That Kurtz did not "do the math" to calculate defendant's probation term under Assembly Bill 1950 does not undermine the conclusion that he acted reasonably based on the information he had. (*People v. Downey* (2011) 198 Cal.App.4th 652, 660.)

While the trial court expressed some frustration that the source of the error remained unknown, we note that Assembly Bill 1950 had been effective for just over eight months at the time of the August 10, 2021, search. Further, nothing in the record indicates that any judicial action had been taken to terminate defendant's probation. A practice guide, addressing the question whether a court should grant a motion to suppress "where the probation search took place within the initial probationary time but after the expiration of the probation term established by" Assembly Bill 1950, observed that "[s]everal cases support the argument that absent a judicial determination terminating probation, the defendant is still subject to ongoing probation terms." (Bensinger, Preliminary Hearing Handbook (The Rutter Group 2023) § 8:63, fn. 16, citing *People v. Fields* (1981) 119 Cal.App.3d 386, 390-391 [despite reversal of defendant's conviction,

10

his consent to warrantless search as a probationer is "operative until that status is terminated by its terms or through judicial action"]; *People v. Dubose* (1971) 17 Cal.App.3d 43, 49 ["an individual is subject to all the disabilities of a judgment, commitment or sentence, which, though voidable, has not been judicially voided"].)[3] The handbook noted that some superior courts have "taken the proactive step and established procedures to terminate probation consistent" with Assembly Bill 1950. (Bensinger, Preliminary Hearing Handbook, *supra*, § 8:63.) Nothing in the record indicates that the trial court in this case had taken such a step.

Defendant contends that *People v. Willis* (2002) 28 Cal.4th 22 establishes that the conduct in this case is an exception to the good-faith rule. In *Willis*, a "parole book" showed that the defendant was on active parole when he had actually been discharged months before. (*Id.* at pp. 26-27.) A parole officer and police officer searched his motel room even though the defendant denied being on parole and presented documentation showing that he had been discharged. (*Id.* at p. 27.) The California Supreme Court reversed denial of the defendant's motion to suppress, holding the good faith exception to the exclusionary rule did not apply. (*Id.* at p. 51.) The court concluded the officers' reliance on that parole record did not constitute good faith where no further attempts were made to verify the defendant's parole status by other means prior to the search. (*Id.* at p. 43.) Even if the record error was due to data entry clerks working for the prison system, the court concluded they are adjuncts to law enforcement and the exclusionary rule still applied. (*Id.* at pp. 43-44; see also *People v. Ferguson* (2003) 109 Cal.App.4th 367, 375-377 [where the probation officer or probation clerk failed to enter into a police

---

[3] We do not express an opinion on the merits of this position, but mention it to illustrate the complexity of the issue and the lack of a clear judicial determination that defendant was off probation.

database that the defendant was no longer on probation and subject to search, the exclusionary rule should apply to their errors as members of the law enforcement team].)

Subsequent to *Willis*, the United States Supreme Court in *Herring* clarified the good faith exception. *Herring* explained that the exception applies where recordkeeping errors are "the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements . . . " (*Herring, supra*, 555 U.S. at p. 147; see also *People v. Macabeo* (2016) 1 Cal.5th 1206, 1222 (*Macabeo*) ["The high court has also applied the good faith exception when officers have acted in reasonable reliance on information that subsequently is determined to be inaccurate," citing *Herring*].) In *Herring*, officers searched the defendant incident to an arrest based on a warrant listed in a neighboring county's database. (*Herring,* at p. 137.) Subsequently, it was determined the warrant had been recalled but that information was not entered in the database. (*Id.* at pp. 137-138) The trial court denied the defendant's motion to suppress. (*Id.* at p. 138.)

The Supreme Court upheld the denial, even while acknowledging that police recordkeeping was negligent. (*Herring, supra*, 555 U.S. at pp. 140, 146.) Because the officers who arrested the defendant "did nothing improper" and the recordkeeping error was negligent rather than reckless or deliberate, the error was insufficient "by itself to require 'the extreme sanction of exclusion.' " (*Id.* at p. 140.) The court said it would be different if police "have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests  . . . ." (*Id.* at p. 146.) Also, "where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system." (*Ibid.*) But the officer testified that he never had reason to question information about a warrant in the neighboring county. (*Id.* at p. 147 ["there is no evidence that errors in Dale County's system are routine or widespread"].) The court concluded that in relying on the database, the officer's conduct "was not so objectively culpable as to require exclusion." (*Id.* at p. 146.) As the Supreme Court said in *Macabeo*, the *Herring* court applied a "deterrence rationale

12

. . . emphasizing that excluding evidence would not deter future mistakes where the searching officer had no reason to question the apparent authority granted to him by the information in the computer database." (*Macabeo, supra,* 1 Cal.5th at p. 1223.)

In this instance, the trial court did not err in denying defendant's motion to suppress because the error in the KPF system was "nonrecurring." (See *Herring, supra,* 555 U.S. at p. 144 ["An error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the rule in the first place"].) Kurtz testified he proceeded based on information in a database that he used more than a thousand times over seven years, and in his experience had never been wrong. Moreover, Kurtz did not limit his inquiry to a database, but also confirmed defendant's probation status multiple times with Probation Officer Bernard, who had access to information in the probation office's internal system. While defendant's probationary term had expired under the new law, there was nothing in the record indicating the superior court at that time had affirmatively terminated defendant's probation so as to give law enforcement clear direction. We conclude that Kurtz and the other officers involved in the August 2021 search of defendant's room cannot be deemed to have engaged in deliberate, reckless, or even grossly negligent conduct triggering application of the exclusionary rule. (*Ibid.*)

With respect to the November 2021 search, defendant argues that "[i]n light of the illegality of the search of appellant's residence in August of 2021, any subsequent search based on the evidence illegally seized in November of 2021 is also tainted." However, as stated above we have found that the erroneous search does not justify exclusion; and defendant does not dispute that his pretrial release order contained a valid search and seizure condition. (§ 1318, subd. (a)(2); *In re York* (1995) 9 Cal.4th 1133, 1150-1151.) Thus, the trial court properly ruled that the November 2021 search was valid and properly denied the motion in its entirety.

DISPOSITION

The judgment is affirmed.

                                        /s/
                                    HORST, J.*

We concur:

    /s/
EARL, P. J.

    /s/
DUARTE, J.

---

* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.