Filed 5/8/24; Certified for Publication 5/28/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TARA SHAWNEE PRITCHETT,<br><br>        Defendant and Appellant. | A168411<br><br>(Sonoma County<br>Super. Ct. No. SCR7557621) |

The People appeal from the trial court's order granting defendant Tara Shawnee Pritchett's motion to suppress evidence obtained from a warrantless search of her room in September 2021. The detective conducting the search believed she was on searchable probation.

In August 2018, Pritchett was placed on two years' probation for a misdemeanor offense, which was later extended another year. In May 2019, she was placed on three years' probation for another misdemeanor offense. - However, effective January 1, 2021, Penal Code section 1203a was amended by Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Stats. 2020, ch. 328, §§ 1, 2) (AB 1950) to limit the maximum term of probation a trial court is allowed to impose for most misdemeanor offenses to one year.[1] (§ 1203a, subd. (a).)

---

[1] Undesignated statutory references are to the Penal Code.

The People argue the trial court erred in concluding that as a result of AB 1950, Pritchett's probation terminated by operation of law after one year, and thus terminated upon the effective date of AB 1950, several months before the search. The People further contend the "good faith" exception to the exclusionary rule applies because the detective leading the search made objectively reasonable efforts to determine Pritchett was on searchable probation. We agree with the latter contention and therefore reverse.

## I. BACKGROUND

We take the following facts from the evidence elicited at the hearing on Pritchett's motion to suppress.

In September 2021, Nick Vlahandreas, a narcotics detective for Santa Rosa, conducted a search of Pritchett's hotel room. Prior to the search, Vlahandreas checked Crimnet, which is a database of information "straight" from Sonoma County courts. "[T]here is no one at the police agency . . . that enters [the information]." Crimnet lists a person's "pending court cases, prior arrests, probation status, things of that nature." It also noted if someone's probation had been terminated. In this case, Crimnet showed that Pritchett was on active probation with a condition that she "submit to warrantless search and seizure of person, property, residence, vehicles."

In conducting the probation search, Vlahandreas and the officers accompanying him knocked on Pritchett's door and detained her after she answered. A search of her room located U.S. currency and what Vlahandreas believed was fentanyl.

Pritchett was charged with one felony count of possession for sale of a controlled substance. (Health & Saf. Code, § 11351.) She subsequently moved to suppress the evidence obtained from the search of her room. In her motion, she argued that AB 1950 applied retroactively to her probation

2

grants, and as a result they were terminated when AB 1950 became effective. Therefore, she argued, the warrantless search of her room was unlawful, and the evidence seized from the search must be suppressed. She acknowledged that law enforcement was not "directly" at fault for Crimnet's erroneous information about her probation status but contended the evidence should be excluded anyway since that information was the only basis for the search.

In opposition, the People argued the search was a lawful probation search because AB 1950 did not "automatically" reduce the length of Pritchett's probation grants, and she did not petition the court to terminate her probation. The People acknowledged that some courts have held that AB 1950 applied retroactively, but argued that no case held that AB 1950 "operate[d] automatically" without any judicial action. The People further contended that even if AB 1950 terminated Pritchett's probation, Vlahandreas reasonably relied on court-maintained information, and thus the "good faith" exception to the exclusionary rule applied.

The trial court conducted a hearing on the motion to suppress at which Vlahandreas was the only witness. He testified that he had been a narcotics detective for three years and that "[e]very single person that we investigate we try and look them up in Crimnet." He found Crimnet "reliable" and "accurate" and could not recall "any incidents where it was incorrect that [he] noted someone in Crimnet as searchable." He relied on Crimnet in conducting the search of Pritchett's room. He said that Crimnet showed Pritchett had been placed on probation in August 2018 and again in May 2019. When asked about AB 1950 and its potential effect on the length of probation in misdemeanor cases, he said he was unaware of AB 1950.

After the matter was submitted, the trial court granted the motion to suppress, concluding Pritchett's probation grants automatically terminated

3

when AB 1950 became effective on January 1, 2021, and the good faith exception did not apply. The court thereafter dismissed the charge against Pritchett.

## II.   DISCUSSION

The People argue the trial court erred in granting Pritchett's motion to suppress for two reasons. First, her probation grants were valid at the time of the search because AB 1950 did not automatically terminate them. Second, the good faith exception to the exclusionary rule applies in this case. We find the latter contention dispositive and therefore do not reach the People's first argument.

### A. Legal Standards

Under the Fourth Amendment to the United States Constitution, searches and seizures conducted without a warrant are presumptively unreasonable. "When a defendant raises a challenge to the legality of a warrantless search or seizure, the People are obligated to produce proof sufficient to show, by a preponderance of the evidence, that the search fell within one of the recognized exceptions to the warrant requirement. [Citations.] A probation search is one of those exceptions." (*People v. Romeo* (2015) 240 Cal.App.4th 931, 939.)

As noted, by May 2019, Pritchett had been placed on two three-year probation terms for misdemeanor violations. Effective January 1, 2021, AB 1950 amended section 1203a to limit probation terms to a maximum of one year for most misdemeanors. (§ 1203a, subds. (a), (b).) Several courts have since held that AB 1950 applies retroactively to defendants who were serving a term of probation when the amendment became effective. (See *People v. Faial* (2022) 75 Cal.App.5th 738, 743, review granted May 18, 2022, S273840 [collecting cases].) Assuming without deciding that AB 1950 automatically

4

terminated Pritchett's probation on its effective date because she had been on probation for more than one year at that time, the subsequent probation search of her hotel room was presumptively invalid.

Where a search is found to be invalid, "a Fourth Amendment violation is shown and the question . . . becomes whether such constitutional violation is appropriately remedied by the application of the judicially created exclusionary rule which prohibits the admission at trial of the evidence obtained during the unlawful search." (*People v. Downing* (1995) 33 Cal.App.4th 1641, 1650–1651 (*Downing*), citing *United States v. Leon* (1984) 468 U.S. 897, 906 (*Leon*).) Exclusion of the evidence is compelled "only where it ' "result[s] in appreciable deterrence." ' " (*Herring v. United States* (2009) 555 U.S. 135, 141 (*Herring*).) The Supreme Court has recognized that "exclusion 'has always been our last resort, not our first impulse,' [citation] and our precedents establish important principles that constrain application of the exclusionary rule." (*Id.* at p. 140.)

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. . . . [T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Herring, supra*, 555 U.S. at p. 144.) "[W]hen police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' [Citation.] In such a case, the criminal should not 'go free because the constable has blundered." (*Id.* at pp. 147–148.)

The Supreme Court has clarified that, in applying the good faith exception, "[t]he pertinent analysis of deterrence and culpability is objective,

5

not an 'inquiry into the subjective awareness of arresting officers.' " (*Herring, supra,* 555 U.S. at p. 145.) The " 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.' " (*Ibid.*)

We independently determine the legality of a challenged search or seizure where the facts are undisputed. (*People v. Holiman* (2022) 76 Cal.App.5th 825, 831; *People v. Balint* (2006) 138 Cal.App.4th 200, 205.) The only facts relevant to the search of Pritchett's room are those stated in Vlahandreas's testimony; no other evidence concerning the search was introduced at the hearing on the suppression motion. The trial court's application of the law to those facts thus presents a purely legal question subject to our de novo review. (See *Downing, supra*, 33 Cal.App.4th at p. 1650.)

### B. Analysis

The People argue the trial court erred in concluding the good faith exception was inapplicable, as Vlahandreas acted reasonably in relying on court records to verify Pritchett's probation status prior to conducting the search. We agree.

The trial court based its ruling in part on Vlahandreas's testimony that he was unaware of AB 1950 and the absence of evidence of any training he received, reasoning that "[b]eing a reasonably well-trained officer is a prerequisite to applying the good faith exception." The court further stated that while it did not expect law enforcement to "understand or know the intricacies or nuances of AB 1950," it nonetheless expected a reasonably well-trained officer to "at least have heard of a sweeping change to the law such as AB 1950 which significantly affected probation lengths." "The fact that

6

[Vlahandreas] may have relied on a database containing information from the court would likely have entitled him to the good faith exception had he been reasonably well-trained." The court appears to have misunderstood the objective good faith test.

"The objectively ascertainable question is not whether [the officer] was well-trained or experienced, but whether a reasonably well-trained officer in his position would have known that" the search was illegal. (*People v. Maestas* (1988) 204 Cal.App.3d 1208, 1217; see also *People v. Lange* (2021) 72 Cal.App.5th 1114, 1124 [rejecting the defendant's assertion that he should have had an opportunity to investigate the officer's familiarity with the applicable law]; *Herring, supra*, 555 U.S. at p. 145.) The question thus is whether Vlahandreas "may properly be charged with knowledge that the search was unconstitutional" based on the information provided to him.[2] (*Leon, supra*, 468 U.S. at p. 919; *Herring,* at p. 142.)

---

[2] The cases the trial court relied on do not hold otherwise. (See *People v. Rosas* (2020) 50 Cal.App.5th 17, 25; *United States v. Fencl* (S.D. Cal., Jan. 5, 2023, No. 21-CR-3101 JLS) 2023 U.S. Dist. LEXIS 2231 (*Fencl*).) *Fencl* involved a situation like this case. An officer conducted a probation search of the defendant's car several months after AB 1950 became effective. (*Id.* at *1–2.) Prior to the search, the officer checked a law enforcement database and called court officials. (*Id.* at *3.) He also received a bulletin from the probation department regarding AB 1950 that directed law enforcement to contact the probation office, which the officer did. (*Id.* at *3.) All sources incorrectly informed him the defendant was still on searchable probation. (*Id.* at *3.) The court found the officer had acted objectively reasonably. (*Id.* at *18.) Of significance here, it rejected the defendant's arguments that the police department's " 'barebones' " training—i.e., the bulletin—warranted suppression and that a reasonably well-trained officer would have known to consult sources other than the probation office. (*Id.* at *13-14.) The court also pointed out that the bulletin "originated from the Probation Department, not the police department." (*Id.* at *14.) "The Probation Department's failure

7

On this record, we cannot conclude that Vlahandreas would or should have known that the information on Crimnet regarding Pritchett's probation status was incorrect. Crimnet contains information directly from the judicial system, including whether a person's probation had terminated. Vlahandreas found Crimnet accurate and could not recall an instance where he had incorrectly noted someone in the system was on searchable probation. He had been a detective for three years and used Crimnet extensively in his investigations. He used it to check Pritchett's probation status the morning of the search, and it showed that her probation was still active and included a condition that she submit to warrantless searches of her residence. The record reveals no reason for Vlahandreas to believe Crimnet provided erroneous information in this instance. Based on these facts, he was acting objectively reasonably when he relied on Crimnet. (See *Downing, supra*, 33 Cal.App.4th at p. 1657 [reversing order granting motion to suppress where officer relied on court-maintained data]; *Arizona v. Evans* (1995) 514 U.S. 1, 15–16 [reversing judgment where there was "no indication that the arresting officer was not acting objectively reasonably when he relied upon" incorrect information provided by court clerk].)

Even presuming Vlahandreas should have been aware that AB 1950 made changes to the length of some probation terms, this does not change our conclusion. Police officers are not legal experts. "[W]hat would be reasonable for a well-trained officer is not necessarily the same as what would be reasonable for a jurist." (*United States v. Workman* (2017) 863 F.3d 1313, 1321; see *Heien v. North Carolina* (2014) 574 U.S. 54, 67–68 [officer's error of law was reasonable where statute was ambiguous].) Considering the

to identify the appropriate agency to contact for information . . . is not a concern of the exclusionary rule." (*Ibid.*)

8

language of AB 1950 and the limited legal authority interpreting it, we do not expect a reasonable officer to know that AB 1950 may have terminated existing probation sentences automatically without a judicial determination. Section 1203a, as amended by AB 1950, does not indicate this on its face. It simply states that "[t]he court may . . . make and enforce the terms of probation for a period not to exceed one year" (§ 1203a, subd. (a)), with a limited exception (*id.*, subd. (b)). Moreover, no court has decided this precise issue, though one practice guide observed that "[s]everal cases support the argument that absent a judicial determination terminating probation, the defendant is still subject to ongoing probation terms." (Bensinger, Preliminary Hearing Handbook (The Rutter Group 2023) § 8:63, fn. 16; see, e.g., *People v. Fields* (1981) 119 Cal.App.3d 386, 390–391 [despite reversal of defendant's conviction, his consent to warrantless search as a probationer is "operative until that status is terminated by its terms or through judicial action"].) Given the complexity of the issue, Vlahandreas's failure to recognize Pritchett's probation terms may have terminated without a court order or to conduct his own legal analysis of her probation status prior to the search does not undermine the conclusion that he acted reasonably based on the information he had.

In urging affirmance, Pritchett points to the trial court's conclusion that had Vlahandreas been aware of AB 1950, he would "not have simply relied upon CRIMNET." But in checking Crimnet, Vlahandreas "went beyond a 'bare bones' investigation of relying only on police department in-house computer data." (*Downing, supra*, 33 Cal.App.4th at p. 1657.) "[I]t is absurd to require a police officer to exhaust all avenues of investigation and corroboration when he has no objective reason to question facially valid computer data produced by other than the collective law enforcement in front

9

of him." (*Ibid*.)  For the reasons discussed, we cannot conclude that AB 1950 alone would have put a reasonable officer on notice that the information in Crimnet was inaccurate such that further investigation was required.  (See *People v. Camarella* (1991) 54 Cal.3d 592, 606.)  Though it appears that several other agencies were in fact charged with implementing AB 1950, "[t]he test is whether a reasonably well-trained officer would have known that the search was illegal; not whether a reasonably well-trained officer would have known which public agency was tasked with implementing a statute." (*Fencl, supra*, 2023 U.S. Dist. LEXIS 2231, at *13.)

We acknowledge the concerns raised by the trial court that law enforcement in this case was "completely unaware" of a change in law affecting the legality of some probation searches.  However, as Pritchett's counsel noted at the suppression hearing, AB 1950 has presented a unique situation.  Its "passage was an isolated event that affected numerous probationers in the State of California, and its implementation required the efforts of multiple public agencies, as well as interpretation by California courts." (*Fencl, supra*, 2023 U.S. Dist. LEXIS 2231, at *14–15.)  It had been in effect for just over nine months at the time of the September 2021 search.  Further, no judicial action had been taken to terminate Pritchett's probation.  Looking only at the objective facts—the historical accuracy of Crimnet and the lack of any clear direction to law enforcement regarding the status of Pritchett's probation grants—compels the conclusion that Vlahandreas did not act deliberately, recklessly, or grossly negligent in violating Pritchett's Fourth Amendment rights.  (See *Herring, supra*, 555 U.S. at p. 144.)

In sum, we conclude Vlahandreas acted in objectively reasonably good faith, and applying the exclusionary rule in this case would not serve to

10

promote its purpose of deterring unlawful police conduct.  The trial court therefore erred in granting the motion to suppress.

## II. DISPOSITION

The order dismissing the criminal information against Pritchett is reversed.  The trial court is directed to set aside the order granting Pritchett's motion to suppress and to enter a new order denying the motion.

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

*People v. Pritchett*; A168411

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TARA SHAWNEE PRITCHETT,<br><br>        Defendant and Appellant. | A168411<br><br>(Sonoma County<br>Super. Ct. No. SCR7557621)<br><br>ORDER GRANTING<br>PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on May 8, 2024, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated: _____

_____

Humes, Presiding Justice

1

Sonoma County Superior Court

Hon. Karlene Navarro

Carla C. Rodriguez, District Attorney, Anne C. Masterson, Chief Deputy District Attorney, Sarah A. Brooks, Deputy District Attorney for Plaintiff and Appellant.

Richard Schwartzberg, under appointment for the Court of Appeal, for Defendant and Respondent.