Filed 12/23/25  In re Justin G. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re JUSTIN G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN G.,<br><br>    Defendant and Appellant. | A172973<br><br>(Sonoma County<br>Super. Ct. Nos. 24JV00670,<br>24JV00671) |

After the juvenile court denied Justin G.'s (Justin)[1] motion to suppress evidence obtained during a probation search, he admitted to three felony firearms violations and was sentenced to a term at juvenile hall.  Justin challenges the denial of the motion to suppress, arguing the juvenile court improperly applied the good faith exception to the exclusionary rule.  We affirm.

---

[1] We refer to the juvenile defendant in this case by first name and last initial, and thereafter by first name only.  No disrespect is intended.  (Cal. Rules of Court, rule 8.401(a)(2).)

0

## FACTUAL AND PROCEDURAL BACKGROUND

*Original Juvenile Wardship and Search Conditions*

In August 2023, in juvenile court case No. 24JV00670, Justin admitted a felony violation of possessing a firearm as a minor (Pen. Code,[2] § 29610) and a misdemeanor violation of possessing a large capacity magazine (§ 32310, subd. (c)). He was placed on deferred entry of judgment.

In February 2024, the juvenile court sustained two wardship petitions under Welfare and Institutions Code section 602 based on Justin's additional felony violations for battery (§ 243, subd. (d)), grand theft (§ 487, subd. (c)), and carrying a concealed firearm (§ 25400, subd. (a)(2)).

On March 4, 2024, the juvenile court removed Justin from deferred entry of judgment and declared him a ward of the court, subject to numerous terms and conditions of supervision. Among those conditions, Justin was ordered not to use, possess, transport, sell, or have under his control any firearms, ammunition, or other weapons.

The court also imposed warrantless search conditions, which the juvenile court orally pronounced, in part, as follows: "He is to submit to warrantless search and seizure of his person, property, or vehicle, any time of the day or night; his residence any time of the day or reasonable hour of the night, *and that's by Probation or law enforcement*." (Italics added.)

Additionally, and central to this case, the juvenile court imposed an electronic search condition that extended to probation—but not to law enforcement—stating: "I am going to order that he consent to a search *by Probation*, with or without a warrant, of all electronic devices within his control. That's at any time of the day or night. Electronic devices include computers, laptops, tablets, notepads, cellphones, and smart phones. [¶] He is

---

[2] All further undesignated statutory references are to the Penal Code.

to provide *Probation* with any passwords, log-ins, access codes, or other information that is necessary to access electronic devices . . . ." (Italics added.)

Although the juvenile court's oral pronouncement plainly limited the electronic search condition to apply only to searches by probation, the minute order of that proceeding did not specify whether that condition applied to only searches by his probation officer or also included searches by law enforcement. However, it did unequivocally state that Justin was required to provide passwords, logins, or access codes to "the Probation Officer." To illustrate the lack of clarity, we include a snippet of the minute order, which stated that Justin shall:

> Submit to warrantless search & seizure of person/property/vehicle anytime of day or night including electronic devices within your control. Electronic devices include computers, laptops, tablets, notepads, and cell phones/smart phones. Provide the Probation Officer any passwords, logins, access codes or other information necessary to access the electronic device and the following electronic accounts: e-mail, voice mail, text messaging, and social media accounts including Facebook, Instagram, Snapchat, etc.
> and whole residence anytime of day or reasonable hour of night by any Probation or law enforcement officer

These were the relevant conditions that applied during the December 2024 search that Justin challenged in his motion to suppress.

*Search, Probation Violation Notice, and Wardship Petition*

According to a December 2024 probation report, officers with the Santa Rosa Police Department went to Justin's residence on December 3 to conduct a search. The officers searched Justin's cellphone and within it located videos of him posing with multiple firearms and text messages consistent with him being in possession of multiple firearms. Officers also found what appeared to be a key to a firearm lock on Justin's keychain, but a search of his residence did not disclose any contraband.

The report continued: "In deciphering the minor's text messages, officers noted it appeared the minor was stating he was in possession of firearms, but that the firearms had possibly been taken from where the

2

minor hid them. The officers searched local records for recent calls for service and located a call detailing a business owner who found three firearms on his property, where the minor and his father also worked at. All the firearms were unregistered; one appeared to have been assembled with a 3-D printed lower receiver. They had been stored with miscellaneous firearm parts and ammunition, including a 'lightening link' device used to convert a semi-automatic assault rifle into a fully automatic weapon, i.e. a machine gun. After further investigation, officers believed the minor was responsible for placing the firearms at the business where he worked. On December 4, 2024, officers contacted the minor at his residence and arrested, transported, and booked him into Juvenile Hall without incident."

On December 5, 2024, the Sonoma County Probation Department filed a juvenile notice of violation of probation pursuant to Welfare and Institutions Code section 777, subdivision (a) in case No. 24JV00670. The notice alleged Justin had violated the condition that he not use, possess, transport, sell, or have under his control any firearm.

That same day, the Sonoma County District Attorney filed a juvenile wardship petition in case No. 24JV00671 under Welfare and Institutions Code section 602 charging Justin with felony possession of a machine gun (§ 32625, subd. (a); count 1), three counts of felony unlawful firearm activity (§ 29820, subd. (b); counts 2, 5, & 8), three counts of felony possession of a firearm by a minor (§ 29610; counts 3, 6, & 9), and three counts of misdemeanor unlawful firearm activity (§ 29825, subd. (b); counts 4, 7, & 10).

*Motion To Suppress and Hearing*

Justin filed a motion to suppress the evidence located during and resulting from the search of his cell phone, pursuant to Welfare and Institutions Code section 700.1 and the Fourth Amendment. Justin argued

3

the search was conducted without a warrant and that only a probation officer—not a law enforcement officer—was authorized to search his electronic devices as a condition of his probation, so the search by the Santa Rosa Police Department was unlawful.

The district attorney opposed the suppression motion on the ground that the law enforcement officer who conducted the cell phone search, Detective Jeff Badger (Badger), acted in good faith when searching Justin's phone by relying on information in a portal called Juv-Net indicating Justin was subject to electronic device searches by law enforcement.[3] The district attorney asserted suppressing the evidence under the exclusionary rule was not warranted given Badger's good faith belief and the lack of any deterrent value in suppressing it.

On February 4, 2025, the juvenile court held a hearing on the motion, where the following evidence and testimony was presented.

Badger testified he had worked for the Santa Rosa Police Department for nine years and had been assigned to the gang crimes team for over one year. He had effectuated probation searches on both adults and juveniles, including searches of electronic devices. In order to determine the specific terms of probation, he either used databases provided to officers or police dispatch would inform him the individual was on probation and the terms of probation.

One of the databases Badger frequently used was Juv-Net, which provided data about juvenile offenders. The information on Juv-Net included whether the juvenile was on probation, the name of their probation officer,

---

[3] The opposition also argued the contents of the phone were admissible based on inevitable discovery. The juvenile court rejected that argument, and the Attorney General does not raise it on appeal.

contact information, and information about their court cases. Juv-Net provided "all the court minutes that were documented" by the juvenile courts and put into the database.

Badger commonly spoke with juvenile probation officers to provide each other information or assistance, including about juveniles on probation with electronic search terms, and he had "worked alongside" probation officers to effectuate electronic probation searches. For example, probation officers could share a probationer's passcode with law enforcement "[t]o allow [law enforcement officers] to have access to search the cell phone." Probation officers also shared what they found on a probationer's phone with law enforcement and asked law enforcement to review the contents of a phone. He had worked with Justin's probation officer, Devin Campbell (Campbell); Campbell had provided passwords for juveniles' phones and police had downloaded the contents of a phone and shared that information with Campbell.

Prior to the December 3 search, Badger told Campbell he would likely be conducting a probation search of Justin. Badger declined Campbell's offer of assistance. Badger did not recall discussing an electronic search condition with Campbell. Badger did not believe he had asked Campbell for Justin's phone passcode because, if he had asked Campbell for it, Campbell would have provided it. Hence, Badger did not have Justin's phone passcode prior to arriving at Justin's home to conduct the search.

On December 3, Badger looked up Justin in Juv-Net. Although Badger could have accessed the actual court minutes through Juv-Net, he did not do so and instead only saw the probation terms as they appeared in the Juv-Net screenshot below.

5

A screenshot of the Juv-Net screen as Badger saw it on December 3 was admitted into evidence as People's Exhibit No. 2. Below is a snippet of the Juv-Net screenshot.

| | |
|---|---|
| 6/12/2024 8:30 AM | Submit to warrantless search and seizure of person/property/ vehicle and time of day or night |
| 6/12/2024 8:30 AM | and whole residence anytime of day or reasonable hour of night by any probation officer or law enforcement officer. |
| 6/12/2024 8:30 AM | Submit to chemical testing as directed by any probation officer or law enforcement officer. |
| 6/12/2024 8:30 AM | Do not possess intoxicating substances/beverages associated paraphernalia |
| 6/12/2024 8:30 AM | Not use/possess/transport/sell or have under his/her control any firearm/replica/ammunition or |
| 6/12/2024 8:30 AM | other weapon, including a knife/any explosive/any item intended for use as a weapon or anything you knowingly intend to use as a weapon. |
| 6/12/2024 8:30 AM | Do Not Associate With David Lopez-Cruz, Nicholas Valencia Mendez, Epimenio Villa, Esteban Chavez-Gonzalez, Ismael Antonio Guzman-Santana, Anthony Hernandez, Edloi Garcia-Tello, Bryan Hernandez-Lopez, Oscar Chavez-Solorio, Andrew Gilberto Aguilar and Benjamin Jimenez. |
| 6/12/2024 8:30 AM | Do not be on or about/within 100 yards Bellevue Ranch Park. |
| 6/12/2024 8:30 AM | Have no contact directly, indirectly or through third party with victim(s): Richard Jose Cruz Jr. or by electronic means. |
| 6/12/2024 8:30 AM | Adhere to the following curfew unless with probation officer /parent/guardian permission: 9:00 p.m. |
| 6/12/2024 8:30 AM | Make reasonable efforts to seek and maintain gainful employment when not in school. |
| 6/12/2024 8:30 AM | Attend school and do schoolwork |
| 6/12/2024 8:30 AM | Participate in Community Service in the amount of 80 hours within 120 days. (Including Original 40 hours) |
| 6/12/2024 8:30 AM | Minor/Parent/Guardian shall participate in counseling /intervention programs designated by Probation Officer |
| 6/12/2024 8:30 AM | Restitution fine Amount: $300.00 |
| 6/12/2024 8:30 AM | FAILURE TO COMPLY WITH THE TERMS COULD RESULT IN THE MINOR'S IMMEDIATE DETENTION IN JUVENILE HALL. |
| 6/12/2024 8:30 AM | including electronic devices within your control. Electronic devices include computers, laptops, tablets, notepads, and cell phones/smart phones. Provide the Probation Officer any passwords, logins, access codes, or other information necessary to access the electronic device and the following electronic accounts: e-mail, voice mail, text messages, social media accounts including Facebook, MySpace, MocoSpace, Instagram, Snapchat, etc. |

According to Juv-Net (see first two lines, above), Justin's probation terms required him to submit to a warrantless search and seizure of his person, property, or vehicle at any time of day or night, as well as a search of his whole residence by any probation or law enforcement officer. At the beginning of a separate line further down the screen was a term that stated " 'including electronic devices within your control.' "

Badger was familiar with the electronic devices search language from prior searches. Based on the Juv-Net screenshot, Badger read the line that started with " 'including electronic devices within your control' " to stem from the prior two search terms regarding searches of Justin's person, property, and vehicle and the search of his residence. Badger acknowledged the Juv-Net screenshot in People's Exhibit No. 2 did not explicitly say that law enforcement may search Justin's phone, but it also did not say law enforcement could *not* search his electronic devices. Hence, based on past practice and his interpretation of the search conditions, Badger believed the electronic search condition applied to law enforcement.

Badger stated that, after the portion of the term that discussed electronic devices within Justin's control, the condition stated that Justin

6

must provide *the probation officer* any passwords or logins. Thus, the Juv-Net screenshot did not say that law enforcement officers specifically have a right to demand Justin's passcode. However, he noted that portion appeared only after the condition says " 'including electronic devices within your control.' " He also noted that, right above the electronic device line, there was a condition that stated failure to comply with the terms could result in the minor's immediate detention in juvenile hall.

Badger recounted the circumstances of the cellphone search as follows. When he was at Justin's home on December 3, Badger saw Justin arrive at the house before getting in a pickup truck. Badger and other officers "had him step out of the pickup truck, advised him that we were just here to do a probation search and that we had talked to his probation officer, and then we conducted our search," which included searching Justin's person. Officers found a small key that looked like one used for a specific gun lock, but they did not find any illegal contraband during a subsequent search of the residence.

Badger asked Justin if he had an electronic search term of his probation because he thought he remembered seeing that condition on Justin's court minutes. Justin said either " '[n]o' " or " 'I don't know' " as to whether he had such a condition. Justin also told Badger he had a white iPhone after initially denying having a cell phone; Badger located the phone in the truck.

When Badger asked Justin to provide the passcode to his cellphone, Justin said no. Badger then told Justin that it would be a violation of his probation if he did not provide his cellphone passcode. He denied threatening to take Justin to juvenile hall if he declined to provide the passcode, stating, "I think it was more of a you really want to go to Juvenile Hall for not

7

handing over your passcode?" Justin then complied and provided him with the passcode. Badger used the passcode to access Justin's phone and reviewed a few messages and photos, from which he found the incriminating firearm photographs.

Badger then told Justin they were going to seize the phone and plug it into a software system at the police department to download the content of the cellphone, to which Justin replied, " '[expletive] plug it in.' " When Justin told Badger there were photos on the phone that would violate his probation, Badger responded that officers would download the contents of the phone and provide a copy to Campbell, who would make the decision as to whether to initiate a probation violation.

Based on past practice, if Justin had not provided his cellphone passcode on the scene, Badger would have reached out to Campbell, who would have provided the passcode to them, or he would have given Campbell the phone. It was Badger's intent all along to share the phone or its contents with Campbell.

Campbell testified that he had a conversation with a detective the day Justin was arrested (the day after the search) about Justin "being involved in some type of crime" and the detective stated "some of that information could be found on his phone." Campbell did not recall if he had Justin's phone password on the day of the arrest, but if Badger had asked for the password, Campbell "would have obtained it and delivered it" to him. That was standard practice, and he routinely worked with the police department to search for violations on a probationer's cellphone, including by sharing phones among the agencies.

Campbell testified that, although Justin's electronic search term did not state that he had to provide *law enforcement* with his passcode, Campbell

8

believed he had authorization to share a probationer's password with law enforcement and doing so had always been the common practice.

*Juvenile Court Ruling*

On February 14, 2025, the juvenile court denied the motion to suppress. The court found both Badger's and Campbell's testimony "extremely credible." Based on that testimony, it found the good faith exception to the exclusionary rule applied as Badger acted in good faith when he searched Justin's phone under the belief that the search conditions applied to both probation *and* law enforcement. The court found that probation, Justin, and Badger all believed the electronic search terms applied to law enforcement, and that Campbell believed law enforcement could do electronic device searches without any specific authorization by probation. Also, the testimony showed law enforcement had previously conducted searches of electronic devices at probation's request and with probation's approval.

The court further found that, in this case, the remedy of suppression would not serve as a deterrent given the good faith belief that both law enforcement and probation had about the nature and scope of the search conditions. However, the court also stated that "at this point I believe Probation and law enforcement, through the DA's office, is on notice, and I'm not sure this good faith exception would apply in any future cases."

*Admissions and Disposition*

On February 27, 2025, Justin admitted violating probation in case No. 24JV00670. He also admitted, in case No. 24JV00671, possession of a machine gun (count 1) and two counts of felony unlawful firearm activity (counts 2 and 8).

9

At the March 17, 2025 disposition hearing, the juvenile court ordered Justin to be committed to juvenile hall and the Compass Academy for 980 to 1,170 days, with credit for time served, and ordered the delinquency proceedings dismissed upon completion of that term. The court left open the possibility of modifying the order if Justin graduated from high school and did well in juvenile hall.

**DISCUSSION**

Justin contends the juvenile court erred by concluding the good faith exception to the exclusionary rule applied and, on that basis, denying the motion to suppress. We disagree.

## I. Applicable Legal Principles

In California, issues concerning the suppression of evidence obtained by police searches and seizures are reviewed under federal constitutional standards. (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.)

The Fourth Amendment protects against unreasonable searches and seizures, and reasonableness generally requires the obtaining of a warrant. (*Riley v. California* (2014) 573 U.S. 373, 381–382.) When reviewing a court's ruling on a motion to suppress, we defer to its factual findings, express or implied, where they are supported by substantial evidence. (*People v. Macabeo, supra*, 1 Cal.5th at p. 1212.) We exercise our independent judgment to determine whether, on the facts so found, the challenged search or seizure was reasonable under the Fourth Amendment. (*Ibid.*)

"When a defendant raises a challenge to the legality of a warrantless search or seizure, the People are obligated to produce proof sufficient to show, by a preponderance of the evidence, that the search fell within one of the recognized exceptions to the warrant requirement. [Citations.] A probation search is one of those exceptions." (*People v. Romeo* (2015) 240 Cal.App.4th

10

931, 939.) However, "[b]ecause the terms of probation define the allowable scope of the search [citation], a searching officer must have 'advance knowledge of the search condition' " before conducting a valid probation search. (*Id.* at pp. 939–940.)

Where a search is found to be invalid under the Fourth Amendment, the question becomes " 'whether such constitutional violation is appropriately remedied by the application of the judicially created exclusionary rule which prohibits the admission . . . of the evidence obtained during the unlawful search.' " (*People v. Pritchett* (2024) 102 Cal.App.5th 355, 360.)

*Herring v. United States* (2009) 555 U.S. 135 (*Herring*) provides the most recent pertinent guidance from the Supreme Court in applying the exclusionary rule. In *Herring*, the Court began by noting that "exclusion 'has always been our last resort, not our first impulse,' [citation], and our precedents establish important principles that constrain application of the exclusionary rule." (*Id.* at p. 140.)

In particular, the exclusionary rule applies "only where it ' "result[s] in appreciable deterrence," ' " not mere marginal deterrence. (*Herring, supra,* 555 U.S. at p. 141.) As the Court explained: " '[T]o the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs.' [Citation.] The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system.' [Citation.] '[T]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application.' " (*Ibid.*)

Additionally, *Herring* stated that "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the

11

culpability of the law enforcement conduct." (*Herring*, *supra*, 555 U.S. at p. 143.) The exclusionary rule "serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Id.* at p. 144.) However, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, [citation], or when their conduct involves only simple, 'isolated' negligence, [citation], the ' "deterrence rationale loses much of its force." ' " (*Davis v. United States* (2011) 564 U.S. 229, 238.) That is because " '[i]solated,' 'nonrecurring' police negligence[] . . . lacks the culpability required to justify the harsh sanction of exclusion." (*Id.* at p. 239, quoting *Herring*, at pp. 137, 144.)

Thus, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." (*Herring*, *supra*, 555 U.S. at p. 144.) "The pertinent analysis of deterrence and culpability is objective," not subjective. (*Id.* at p. 145.) The " 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.' " (*Ibid.*)

## II. The Good Faith Exception Applies

As conceded by the Attorney General at oral argument, the challenged search in this case violated the Fourth Amendment because it did not fall within the scope of searches permitted by Justin's terms of probation. (See *People v. Romeo*, *supra*, 240 Cal.App.4th at pp. 939–940.) We therefore turn to the question of whether that constitutional violation is appropriately remedied by application of the exclusionary rule (*People v. Pritchett*, *supra*,

102 Cal.App.5th at p. 360), or whether, as the juvenile court found, the good faith exception to the rule applies.

Justin argues the juvenile court erred in refusing to exclude the evidence based on the good faith exception because Badger's conduct did not satisfy the objective reasonableness test. Rather, an objectively reasonable reading of the probation terms would lead a law enforcement officer to believe he was not authorized to demand passwords from the juvenile to search his phone, and Badger deliberately chose to ignore the clear language of the search conditions. Justin argues Badger purposefully violated the search terms and, hence, applying the exclusionary rule would serve to deter police misconduct.

We are not convinced by Justin's assertion that a reasonably well-trained officer viewing the Juv-Net screenshot would have necessarily known that the portion of the search condition beginning with "including electronic devices within your control" applied only to probation officers and not law enforcement officers. (See *Herring*, *supra*, 555 U.S. at p. 145.) That line appeared below other search conditions that required Justin to submit to a warrantless search of his person, property, vehicle, or whole residence by any probation *or* law enforcement officer. Badger's testimony—which the court found extremely credible—was that he read the electronics search condition to be a continuation of that prior search condition. Hence, substantial evidence supports the juvenile court's finding that Badger had a good faith belief that the electronic search condition applied to him and permitted him to search Justin's phone.

We recognize that the following portion, which expressly stated that Justin was required to "[p]rovide the Probation Officer any passwords[] [or] logins," is more problematic. However, and contrary to Justin's assertion, the

13

record does not support a finding that Badger purposefully disregarded the passcode portion of the electronic search condition.  Rather, the evidence indicates that Badger was merely negligent in delineating between his perceived authority to search Justin's phone and whether that extended to demanding Justin provide his passcode, but his conduct was not the result of "systemic error or reckless disregard of constitutional requirements" warranting suppression.  (See *Herring*, *supra*, 555 U.S. at p. 147.)

Specifically, it is unclear how Badger could have effectuated the cellphone search that he reasonably and in good faith believed was within his authority without Justin's passcode.  (See, e.g., *People v. Ebertowski* (2014) 228 Cal.App.4th 1170, 1175 ["Without passwords for defendant's devices . . . , the probation officer would not be able to search them."].)  Indeed, "[t]he evident purpose of the password condition[] was to permit the probation officer to implement the search" of Justin's cellphone.  (*Ibid.*)  Although Badger was negligent in believing that authority extended to him, substantial evidence nonetheless supports the court's finding that he acted in good faith under the (mistaken) understanding that the *entirety* of the electronics search conditions applied to him.

The repeated holdings of the Supreme Court demonstrate that "the deterrent effect of suppression must be substantial and outweigh any harm to the justice system." (*Herring*, *supra*, 555 U.S. at p. 147.)  That high bar is not met in this case.  The juvenile court found the testimony of Badger and Campbell to be credible and, based on that testimony, found the remedy of suppression would not serve to deter any misconduct by police given the good faith belief they both had about the nature and scope of the search conditions. The court also found that law enforcement had previously conducted searches of electronic devices at probation's request and with probation's approval, a

14

fact not disputed by defense counsel at the hearing. In addition, the testimony showed that Campbell would have obtained and provided Badger the passcode if Badger had asked for it and that its contents would have been provided to probation regardless.

To the extent the exclusionary rule would provide " 'some incremental deterrent, that possible benefit must be weighed against [its] substantial social costs.' " (*Herring, supra*, 555 U.S. at p. 141.) Given the serious nature of Justin's firearms offenses in this case, coupled with the lack of any systemic error or "reckless disregard of constitutional requirements" by Campbell, we find that toll to be too costly in this case to warrant application of the " 'last resort' " of exclusion. (*Id.* at pp. 147, 140.)

In sum, the juvenile court did not err in concluding the good faith exception to the exclusionary rule applied under these circumstances based on the facts underlying the search and the lack of deterrence that would result from suppression in this case. Accordingly, application of the exclusionary rule was not warranted, and the motion to suppress was properly denied on that basis.[4]

**DISPOSITION**

The order is affirmed.

---

[4] As a result, we do not reach the Attorney General's alternative argument that the reasonable mistake of fact exception to the exclusionary rule also justified not suppressing the evidence.

PETROU, J.

WE CONCUR:

TUCHER, P. J.

RODRÍGUEZ, J.

A172973 / *In re Justin G.*